**Earl SIMMONS et al.,
Plaintiffs-Appellees,**

v.

**Billy HITT et al., Defendants-Appellants.**

Court of Appeals of Tennessee,
Middle Section.

Feb. 27, 1976.

Rehearing Denied June 25, 1976.

Certiorari Denied by Supreme Court
Nov. 29, 1976.

Charles W. Bone, Goodall & Bone, Gallat-
tin, for plaintiffs-appellees.

F. Clay Bailey, Jr., Dearborn & Ewing,
Nashville, for defendants-appellants.

## OPINION

SHRIVER, Judge.

This suit involves a non-contributory profit sharing pension plan and the right of the plaintiffs to recover contributions made by the employer for their benefit and, particularly, a provision of such plan whereby it is provided that an employee leaving the employment of the employer and entering into direct competition with the employer forfeits his benefits under the plan.

The case came on for hearing on February 13, 1975 before Chancellor C. Allen High, without the intervention of a jury, on the pleadings, exhibits, testimony of witnesses in open court and the entire record and resulted in a Memorandum Opinion, implemented by a Final Decree in favor of the plaintiffs, awarding judgment for the plaintiff Earl Simmons in the amount of $6,323.05; a judgment in favor of Gene Pike for a total of $6,035.90; and a judgment in favor of plaintiff Joe Smith for a total of $3,759.68, from which judgment and decree the defendants have appealed and have assigned errors.

### The Proceedings Below

The original complaint herein was filed on May 17, 1973 and, in pertinent part, alleges that plaintiff Earl Simmons became an employee of B. Hitt Electric Company in May 1958 and continued as such employee until June 1972, and was a participant in the profit sharing plan in question here. It is further averred that plaintiff Joe Smith became an employee of B. Hitt Electric Company in April 1956 and continued until 1961 when he left the employment for a brief three month period, returning at the request of defendant Billy Hitt and, after said return, Joe Smith continued as an employee until July 1972. He also was a participant in the profit sharing plan. It is further alleged that plaintiff Gene Pike became an employee of B. Hitt Electric Company and the Jim Hitt Electric Company on the 14th day of November, 1955, and continued as such employee until his retirement on the 2nd day of May, 1971, and was a participant in the profit sharing plan in question.

It is averred that Billy Hitt, James R. Hitt and Maxine C. Hitt are defendants in their capacity as Trustees of the B. Hitt Electric Company Profit Sharing Plan.

Certain provisions of the said profit sharing plan are alluded to and discussed in the bill of complaint and it is alleged that, by letter dated April 17, 1973, the individual plaintiffs were notified by defendant Billy Hitt, as Chairman of the Administrative Committee of the B. Hitt Electric Company Profit Sharing Plan, that their benefits which had previously accrued were being revoked because of a term in the profit sharing plan providing that the right to receive such benefits would be terminated if the participant entered the employment of a competitor.

(The Chancellor found that the foregoing allegations were sustained by the record and we concur.)

It is alleged that the foregoing provisions terminating the benefits of a participant who entered into a competitive business amounts to an unlawful and unjust restraint from engaging in a lawful profession, trade or business, and, therefore, plaintiffs seek the judicial declaration of the Court that said provisions violate public policy and are void.

Certain allegations as to mismanagement of the fund were made but are no longer insisted on.

It is further alleged that the terms and conditions of the profit sharing plan were never fully explained to the plaintiffs and that this was a violation of their rights and a violation of the duties of the Trustees of the fund.

The prayers of the bill are:

(1) For process;

(2) For a decree declaring that the attempted revocation of the benefits of plaintiffs in the plan is void as against public policy;

(3) For an accounting of the fund by the Trustees;

(4) That the profit sharing plan be abolished and the individual plaintiffs be allowed to receive immediately all of their accrued benefits under the plan, or, in the alternative, that the Court appoint independent and responsible Trustees or a receiver for said trust funds to manage same in accordance with the guidelines of the Court.

(5) For recovery of attorneys' fees and the costs of this cause.

Counsel for the appellants state that the parties have agreed and that the allegation of mismanagement of the fund is not an issue and have stipulated the respective financial interests of the plaintiffs in the plan at the time they left the employment of the Electric Company.

Defendants in their Answer deny that the forfeiture provisions of the plan are invalid or in restraint of trade and violative of public policy, saying that the plaintiffs made no contribution to the plan and that each plaintiff contacted customers of the defendants immediately prior to leaving defendants' employment and that plaintiffs, upon leaving, immediately commenced doing work for these customers, hence, that the plaintiffs were in direct violation of the provisions of the agreement against entering into direct competition with the defendant employers, the penalty for such conduct being the loss of benefits under the plan.

### Chancellor's Memorandum

The Chancellor in his Memorandum Opinion found:

That the Profit Sharing Plan was established December 31, 1958; employees to begin receiving benefits thereunder when they reached age fifty; if discharged for dishonesty or disloyalty he forfeited the entire amount in his account; that at the end of each year Participants would have a vested non-profitable interest in five percent of the amount in his account; that the Plan provided that no amendment "(c) shall reduce the interest of a Participant in the trust property as of the time of his right to enjoy such interest without written consent of the Participant."; that on December 28th the Plan was rewritten changing the

forfeiture provisions; that by letter of April 17, 1973 plaintiffs were notified that the Plan was being abolished as of the end of 1973 and all benefits revoked as per Section 10.07 of the Plan; that all three plaintiffs were Participants in the Profit Sharing Plan; that all three left their employment with defendants and went into direct competition with their former employer in violation of the forfeiture clause, Section 10.07 of the Amended Plan.

We concur in the foregoing findings of fact by the Chancellor.

### Chancellor's Conclusions of Law

"1. A non-contributory pension and profit sharing plan is not a gratuity, but is an offer of additional deferred compensation and the offer is accepted by the employee remaining in the employment of the employer, which is sufficient consideration to support the employer's promise to pay the benefits, and is, therefore, a contract enforceable by the employee.

2. The forfeiture clause added by the 1962 amendment does not apply to any benefits accruing to the plaintiffs under the plan prior to the effective date of the amendment.

3. Forfeitures not being favored those claiming them have the burden of establishing the forfeiture. Therefore, the Court holds that the plaintiffs are entitled to all benefits that accrued prior to the plaintiffs' specific knowledge of the amendment adding the forfeiture clause."

Subsequent to the filing of the foregoing Memorandum and Findings of Fact by the Chancellor, the parties entered into a Stipulation entitled "Stipulation in Lieu of Reference to the Master." Said Stipulation is to the effect that:

Plaintiff Earl Simmons had total benefits accrued in the B. Hitt Electric Company Profit Sharing Plan on December 20, 1969 of $8,087.59, with fifty percent vested, and is entitled to a judgment in the amount of $4,043.80, and had a further balance of $4,558.49, same being fifty percent vested, for a total judgment of $6,323.05;

That plaintiff Gene Pike had benefits in the Profit Sharing Plan which entitled him to a judgment of $6,035.90;

That plaintif Joe Smith is entitled to a judgment of $3,759.68.

The assignments of error do not question the above stipulated amounts.

## Assignments of Error

There are three assignments of error which are as follows:

"I. The Chancellor erred in holding that the forfeiture provision of the B. Hitt Profit Sharing Plan was applicable to the plaintiffs, former employees, only upon their having specific knowledge thereof, where they had knowledge of the Plan, which they were told was at all times available for them to read and they failed to do so.

II. The Chancellor erred in holding that a profit sharing plan was an implied compensation for the employees continued employment and not a gratuity, and then awarding the benefits thereof to employees who leave the employer, taking its customers.

III. The Chancellor erred in construing an amendment to the forfeiture clause of the B. Hitt Profit Sharing Plan as a reduction in the prior rights of an employee to enjoy the benefits of the Plan."

## Our Conclusions

The original B. Hitt Electric Company Profit Sharing Plan which is Exhibit 8 and which became effective December 31, 1958, is a very long and involved document. It is summarized in the brief of counsel for the appellees and we find the summary substantially accurate.

It will not be necessary to examine and comment on all of the provisions of this document, but certain pertinent provisions should be noticed.

Article IV, Section 3, of the original plan provides:

"3. In no event shall the principal or income of this Trust be paid to or revert to the COMPANY, or be used for any purpose whatsoever other than the exclusive benefit of the Participants or their beneficiaries."

Article VI, Section 1, provides:

"1. Notwithstanding anything to the contrary, if the COMPANY shall discharge a Participant for dishonesty, or disloyalty, the Participant shall forfeit the entire amount in his account and shall be entitled to no benefits under this Plan, and all references herein to non-forfeitable interests shall be subject to this exception."

In the 1962 amendment the foregoing provision was changed so as to provide that no part of the individual account balance shall be payable to any participant following a determination by the Committee that he has committed an act of fraud or dishonesty, been convicted of a felony or a misdemeanor involving moral turpitude, or has entered employment in direct competition with the participating employer.

Article VI, Section 2, provides:

"At the end of his first year in the Plan, a Participant shall have a vested and non-forfeitable interest of five (5%) percent of the amount credited to this account. At the end of each additional full year of continuous service, an additional five (5%) percent of the amount shall become vested. . . ."

Under the amendment Article X, Section 1, was made to provide that the Company reserves the right to amend the trust agreement at any time and to any extent and in any manner that it may deem advisable by delivery to the Trustees of a certified copy of a resolution of the Board of Directors making such amendment, thus, binding all participants who claim an interest thereunder.

Article X, Section 2, provides:

"In the event of termination of the Plan, or of a discontinuance of contributions required hereunder, the Participants, former Participants, and beneficiaries of deceased Participants, shall have a fully vested interest in the amount

credited to their respective accounts at the time of such termination or discontinuance."

When, on December 28, 1962, the entire Plan was amended and rewritten, no effort was made by the defendants to advise the employees of this action and the consent of the employees was not obtained.

Section 5.01 of the Amended Plan provides that all benefits due the Participants are payable at the end of sixty days following termination of employment of the Participant and receipt by the Committee of an application for benefits, or at such earlier date as the employer may direct.

Section 6.01 of the Amended Plan is significant. It provides as follows:

". . . No amendment, unless it is necessary in order to meet the requirements of any State or Federal law or regulation, shall operate to deprive any Participant of any benefits which have vested in him prior to such amendment; and that no amendment shall have the effect of re-vesting in any Participating Employer any portion of the Fund."

*It is stipulated that plaintiffs have vested benefits prior to the 1962 Amendment, hence, is conclusive as to such accrued interests.*

■ As to questions of fact shown by this record, we have no doubt that, as was found by the Chancellor, the plaintiffs herein did leave the employ of the Electric Companies for which they worked with the purpose of engaging in direct competition with the employer and, in fact, did engage in such direct competition. We do not share the view of counsel for the appellees that this conduct is to be condoned and, except for certain other provisions of the Plan noted hereinabove, and which are referred to hereinafter, we think the provision that an employee who leaves and goes into direct competition with his employer forfeits his participation in the fund might be enforced, assuming notice and acceptance of such provision by the employees.

■ As was held in *Sanders v. Sanders,* 40 Tenn.App. 20, 288 S.W.2d 473 (479)

(1955), forfeitures are not illegal per se and will be enforced unless contrary to equity and justice, the Court stating:

"The law does not favor forfeitures, and they will be strictly construed and enforced only within both letter and spirit of law, but they are not illegal and will generally be enforced unless justice and equity are violated."

■ We concur in the conclusion of law reached by the Chancellor to the effect that a non-contributory pension and profit sharing plan is not a gratuity but is an offer of additional deferred compensation and the offer is accepted by the employee remaining in the employment of the employer which is sufficient consideration to support the employer's promise to pay the benefits and is, therefore, a contract enforceable by the employee. Also, that the forfeiture clause added by the 1962 amendment does not apply to any benefits that become vested in the plaintiffs under the plan prior to the effective date of the amendment under the provisions of the Plan and the facts shown by the record.

We are unable to escape the conclusion that the provision in the plan that no amendment should reduce the interest of a participant in the trust property as of the time of the amendment without the written consent of the participant is a valid provision and that, according to the evidence in this record, no written consent of the plaintiffs who were under the plan at that time was obtained and, in fact, no effort was made by the defendants to advise the employees of this action or to gain their consent.

We are of opinion that the change in the provision of Art. VI, Sec. 1, from one that provided forfeiture in the event of dishonesty and disloyalty to one that provided for forfeiture in the event that the employee went into direct competition with the employer amounted to a reduction of the interest of the plaintiffs in the trust property and, therefore, without the consent of the participant, was not enforceable.

In *60 Am.Jur.2d, Pensions and Retirement Funds,* it is said (p. 952) that pension

and retirement plans are liberally construed in favor of the employee, it being the general rule that pension plans formulated by the employer are to be construed most strongly against the employer.

> "Other courts reflect an increasing trend to hold that private non-contributory pension and retirement plans create a contractual obligation in which the promise to pay benefits is made in consideration of the continued faithful service of the employee for the requisite period. [citing cases]"

Tennessee cases dealing with pensions are to like effect. See *Pless v. Franks*, 202 Tenn. 630, 308 S.W.2d 402 (1957) and *Wyckoff v. Memphis*, 208 Tenn. 604, 348 S.W.2d 289 (1961).

In the unreported decision of the Western Section of this Court written by Judge Matherne, in the case of *Johnson v. Mueller Co.*, 1974, it was said:

> "We hold a non-contributing pension plan is not a gratuity. It is an offer of additional deferred compensation to the employee as an incentive toward continuing better service and loyalty; the offer is accepted by the employee remaining in the employment of the employer, which is sufficient consideration to support the employer's promise to pay the benefits, and is therefore a contract enforceable by the employee."

From the principle just stated, it follows that one who is employed on terms which include a particular profit sharing plan has a right to expect that the plan will continue unchanged until he is notified otherwise. Even though the plan is in fact changed, the terms of employment, including rights in the profit sharing plan remain unchanged until the employee is notified and thereby given opportunity to decline to work on the new terms. If, after notification, the employee continues to work, this would be an acquiescence in or acceptance of the amended plan in respect to rights accruing thereafter.

On this basis, each of the plaintiffs is entitled to enforce his rights under the old plan for that period in which he continued to work without notice of the change.

For the reasons thus stated, we are of opinion that the judgment of the Chancellor must be affirmed. Thus, the assignments of error are overruled and the judgment of the Chancellor is affirmed.

AFFIRMED.

TODD and DROWOTA, JJ., concur.