# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
May 4, 2010 Session Heard at Knoxville

## PATRICIA HENDERSON v. SAIA, INC. ET AL.

**Appeal as of Right from the Circuit Court for Davidson County**

**No. 08C4041      Barbara N. Haynes, Judge**

---

**No. M2009-01723-SC-R3-WC - Filed August 24, 2010**

---

This workers' compensation appeal was initially referred to the Special Workers' Compensation Appeals Panel for a hearing and a report of findings of fact and conclusions of law in accordance with Tennessee Code Annotated section 50-6-225(e)(3). After oral argument was conducted before the Panel, but before the Panel filed its opinion, the case was transferred to the full Court in order to consider a request under Tennessee Rule of Civil Procedure 60.02 to set aside a judgment approving a settlement. The trial court found no basis for setting aside the settlement under Rule 60.02. Neither do we. The judgment of the trial court upholding the parties' settlement is affirmed.

**Tenn. Code Ann. § 50-6-225(e) (2008) Appeal as of Right;
Judgment of the Circuit Court Affirmed**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which JANICE M. HOLDER, C.J., and GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Jonathan R. Bunn, Tullahoma, Tennessee, for the appellant, Patricia Henderson.

Colin M. McCaffrey, Nashville, Tennessee, for the appellees, SAIA, Inc. and Discover RE.

# OPINION

## Facts[1]

The employee, Patricia Henderson, worked as an over-the-road truck driver for the employer, SAIA, Inc. On May 17, 2007, she fell attempting to exit the cab of her truck, resulting in an injury to her right hip, specifically a femoral neck fracture. The injury was accepted as compensable, and the employer provided medical treatment and temporary disability benefits.

The employee's femoral neck fracture was surgically repaired by Dr. Gary Stevens on May 29, 2007. However, this procedure apparently did not have a satisfactory result and the employee was referred to Dr. Andrew Shinar, who performed a total hip replacement surgery on January 9, 2008. The record does not contain any notes or other medical records of either Dr. Stevens or Dr. Shinar that shed light on the employee's treatment or progress while under their care. The employee alleges, however, that Dr. Shinar told her that it might take up to two years for her to reach maximum medical improvement.

At the employer's request, the employee was examined by Dr. W. Blake Garside on August 26, 2008. Dr. Garside concluded that the employee had reached maximum medical improvement and that she retained an anatomical impairment of 15% to the body as a whole. Based upon a functional capacity evaluation which Dr. Shinar ordered, Dr. Garside placed permanent restrictions upon the employee's activities, including a forty-pound lifting limit, limited stair climbing, and a prohibition against ladder climbing. According to Dr. Garside's report, those limitations precluded her return to work driving a truck for the employer. She did not return to work.

The employee, who was not represented by counsel, was contacted by Discover RE, the employer's insurer, in an attempt to settle her workers' compensation claim. An agreement was reached to settle the matter for 26% permanent partial disability to the body as a whole. By letter dated November 24, 2008, the employee was contacted by a law firm representing the employer confirming the terms of the settlement. Transmitted with that letter were an affidavit for the employee to sign indicating her desire to settle the case, a petition seeking court approval of the settlement, a proposed order approving the settlement, and a statistical data form, along with directions concerning their execution and return. The law firm's letter stated in relevant part:

---

[1]This case was originally resolved by agreement of the parties. Consequently, there is no transcript or factual findings by the trial court regarding the underlying merits of the case. The facts set forth in this opinion are based upon the parties' allegations and assertions found in the record on appeal.

In order to settle your claim, the workers' compensation law of Tennessee requires that your settlement be approved by a judge before it can become final. This rule requires the parties to make an appearance before a judge, explain to the judge the nature of the worker's injury and the settlement the parties have agreed upon, and ask for the judge's approval. The judge then asks the injured worker if he understands the terms of the agreement, and if he agrees to accept it. If the judge is satisfied that the worker understands the terms of the agreement, and he finds it to be acceptable, he will then approve the settlement.

Because you are living in Shelbyville, Tennessee, we are going to ask the judge if he will approve your settlement without meeting you personally, but rather by submitting to him a sworn statement made by you that tells the judge that you understand the terms of the agreement, and you agree with them. To save you the trouble of having to write this statement yourself, I have drafted a statement for you (called an "Affidavit"), which covers all the issues the judge would likely ask you if you appeared before him personally, and I am enclosing that statement for your signature.

Please read the enclosed Affidavit carefully and complete #2. If everything contained in it is correct, sign it in the presence of a Notary Public and return it to me. . . . If there are any problems with the Affidavit, please call me as soon as possible at the above telephone number, so that we can make the necessary corrections and send you a revised Affidavit.

Once the Affidavit, Petition and Order, and Statistical Data Form are signed and returned to me, I will see if the judge can settle your case as soon as possible.

Neither the letter nor any other correspondence in the record indicates the date or place that the settlement would be presented to a judge for approval.

The employee executed and returned the documents in the manner set out in the law firm's letter. Thereafter, the proposed settlement was presented to a judge of the Circuit Court of Davidson County, who approved it on December 8, 2008. The court's order, which was signed by the employee, recited that she retained a 15% permanent physical impairment, her medical bills totaling $43,029.45 had been paid in full, and that she was entitled to a lump sum payment of $71,451.40, which represented a vocational impairment of 26% to the whole body. Future medical benefits were held open. There is no dispute that these terms accurately reflected the parties' agreement.

-3-

Some six months later, on June 4, 2009, the employee filed a motion seeking to set aside the trial court's order approving the parties' settlement. Relying upon Tennessee Rule of Civil Procedure 60.02, the employee's motion alleged that the order approving the settlement was obtained "as a result of mistake, fraud, misrepresentation, and other misconduct of the employer and insurer . . . ." The facts asserted to support this allegation were that (1) the employee was unrepresented by counsel, (2) the employee did not appear in person before the court prior to entry of the order approving the settlement, and (3) the employee was not given notice of the date and place where the settlement would be presented to the court for approval. The motion further alleged that the terms of the settlement were unfair and that the settlement did not substantially secure to the employee the benefits to which she was entitled under the workers' compensation statutes.

The motion to set aside the settlement was supported by the affidavits of both the employee and her husband, Jerry Henderson. The employee's affidavit states that Dr. Shinar had advised her on an unspecified date that "it would take approximately two years for me to reach my best recovery from the total hip replacement surgery he performed."[2] Further, the employee "disavowed" several statements contained in her prior affidavit executed in December 2008, including affirmations that she understood that she had the right to litigate her claim and that she was giving up that right, that the settlement was in her best interest, and that she wanted the court to approve the settlement in her absence "for to attend this settlement in person would pose a significant burden."[3] Her affidavit also stated that she had relied upon information which her husband had received from the Tennessee Department of Labor concerning the terms of her settlement.

Jerry Henderson's affidavit stated that he had contacted the Tennessee Department of Labor by telephone on several occasions concerning his wife's claim. According to Mr. Henderson, one of those contacts occurred shortly after the initial settlement offer was made by the employer's insurer. Mr. Henderson's affidavit states that he asked an unidentified person if his wife should consult an attorney, and was told that it was not necessary. He later spoke to someone he believed to be the same person and was told that the settlement offer

---

[2]The employee implies that she was not actually at maximum medical improvement at the time Dr. Garside examined her and gave an impairment rating. However, his report refers to restrictions placed upon her by Dr. Shinar, as well as a functional capacity evaluation ordered by Dr. Shinar. Both of these factors are consistent with, though not conclusive of, an inference that Dr. Shinar had placed her at maximum medical improvement.

[3]The record does not reveal the nature of this "burden."

-4-

was "the highest amount [his wife] could get by law."[4]  Mr. Henderson offered no explanation concerning the meaning of this statement, and his affidavit does not otherwise elaborate on this purported conversation.

The employer opposed the employee's effort to have the settlement set aside, arguing that her motion was untimely and that it did not otherwise meet the criteria for relief under Rule 60.02.  Attached to the employer's response to the motion was Dr. Garside's report, the November 24, 2008 letter to the employee explaining the terms of the settlement and transmitting the settlement documents, and a letter dated December 12, 2008 from the employer's lawyer transmitting the settlement documents to the Department of Labor.  The employer argued that there was no basis for setting aside the settlement under Rule 60.02, given that the employee understood the terms of the settlement and was aware that she had the right to litigate her claim but elected not to do so.  The employer also argued that the employee had acknowledged that the settlement was in her best interest and that she wanted the court to approve it without having to physically appear.  The employer's response also noted that as evidence of the employer's good faith, part of the settlement allowed the employee to retain permanent partial disability benefit payments which had been overpaid.

The trial court heard the employee's motion to set aside the settlement on July 24, 2009.  By judgment announced orally at the conclusion of the hearing and entered August 5, 2009, the trial court denied the motion, finding that it was not timely filed and that the employer did not engage in fraud or other misconduct to justify setting aside the settlement.[5]  The employee appealed.

Pursuant to Tennessee Code Annotated section 50-6-225(e)(3) (2008), the case was originally referred to the Special Workers' Compensation Appeals Panel where oral argument was conducted on January 25, 2010.  After oral argument before the Panel, but before an opinion was filed, this Court transferred the appeal to the full Court for consideration.  See Tenn. Sup. Ct. R. 51, § 2 ("[T]he Supreme Court, on its own initiative, may enter an order directing that the appeal . . . be placed on the Supreme Court's docket to

_____

[4]We note that, based on the date the injury occurred, the maximum compensation available to an employee returning to work was capped at 1.5 times the medical impairment rating.  See Tenn. Code Ann. § 50-6-241(d)(1)(A) (2008).  The cap may be exceeded if the employee is unable to return to work.  See id. § 50-6-241(d)(2)(A).

[5]The employee's brief states that she filed a motion to permit oral testimony at the hearing, which was denied by the trial court.  That motion is not in the record.  However, there are references to the motion, and the denial, in the transcript of the oral argument hearing from which it appears that the purpose of the motion was to permit the employee to testify.  No offer of proof was made, however, so the nature of the testimony is unknown.  The employee has not raised this as an issue on appeal.

be heard and determined by the entire Supreme Court in accordance with the Tennessee Rules of Appellate Procedure.").

## Standard of Review

Tennessee law is clear that the disposition of motions under Rule 60.02 is best left to the discretion of the trial judge. Underwood v. Zurich Ins. Co., 854 S.W.2d 94, 97 (Tenn. 1993); Banks v. Dement Constr. Co., 817 S.W.2d 16, 18 (Tenn. 1991); McCracken v. Brentwood United Methodist Church, 958 S.W.2d 792, 795 (Tenn. Ct. App. 1997). The standard of review on appeal is whether the trial court abused its discretion in granting or denying relief. This deferential standard "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives," and thus "envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal." Lee Medical, Inc. v. Beecher, 312 S.W.3d 515, 524 (Tenn. 2010).

A trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case "on a clearly erroneous assessment of the evidence." Id. The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. Eldridge v. Eldridge, 42 S.W.3d 82, 85 (Tenn. 2001). Indeed, when reviewing a discretionary decision by the trial court, the "appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." Overstreet v. Shoney's, Inc., 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999); see also Keisling v. Keisling, 196 S.W.3d 703, 726 (Tenn. Ct. App. 2005).

## Analysis

The employee raises two issues in this Court: (1) whether she is entitled to relief under Tennessee Rule of Civil Procedure 60.02 based on the totality of her circumstances, and (2) whether the parties' settlement satisfies the requirements of Tennessee Code Annotated section 50-6-206(a)(1) (2008) of providing substantially the benefits to which she is entitled. We analyze these issues together.

A party who is dissatisfied with the outcome of a judicial proceeding has thirty days from the date of the entry of the judgment in which to file a motion to alter or amend that judgment. Tenn. R. Civ. P. 59.04; In Re Estate of Ridley, 270 S.W.3d 37, 41 (Tenn. 2008). An employee who believes that a workers' compensation settlement does not secure substantially the benefits to which the employee is entitled also has thirty days after receipt of the settlement papers by the Division of Workers' Compensation in which to ask the trial

court to set aside the judgment. Tenn. Code Ann. § 50-6-206(a)(1).[6] In this case, it is undisputed that the employee did not request to have the parties' settlement set aside based on either Tennessee Rule of Civil Procedure 59.04 or section 50-6-206(a)(1). Rather, she elected to seek relief under Tennessee Rule of Civil Procedure 60.02 only.

*Tennessee Rule of Civil Procedure 60.02*

Rule 60.02 provides that "[o]n motion and upon such terms as are just" a court may relieve a party from a final judgment even after the passage of thirty days. The bases for relief set forth in Rule 60.02 are:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(3) the judgment is void;

(4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or

(5) any other reason justifying relief from the operation of the judgment.

Motions made under Rule 60.02 must be filed "within a reasonable time," although motions asserting the grounds of mistake, inadvertence, surprise, excusable neglect, or fraud must be filed not more than one year after the judgment in question was entered. Tenn. R. Civ. P. 60.02.

The general purpose of Rule 60.02 is "'to alleviate the effect of an oppressive or onerous final judgment.'" Black v. Black, 166 S.W.3d 699, 703 (Tenn. 2005) (quoting Killion v. Dep't of Human Servs., 845 S.W.2d 212, 213 (Tenn. 1992)). Rule 60.02 is equally aimed at striking a "proper balance between the competing principles of finality and justice." Jerkins v. McKinney, 533 S.W.2d 275, 280 (Tenn. 1976). Thus, relief under Rule 60.02 is not meant to be used in every case in which the circumstances of a party change after the entry of a judgment or order, nor by a party who is merely dissatisfied with a particular outcome. Toney v. Mueller Co., 810 S.W.2d 145, 146 (Tenn. 1991). Instead, relief is appropriate only in those relatively few instances that meet the criteria of the rule. Id.

---

[6]Tennessee Code Annotated section 50-6-206(a)(1) requires that the judgment approving the settlement be entered by the court. Within ten days after entry of the judgment, copies of the judgment and settlement must be forwarded to the Department of Labor, Division of Workers' Compensation. Id. The thirty days for asking that the judgment be set aside run from the date of receipt of these documents by the Division of Workers' Compensation. Id.

Rule 60.02 has been described as an "escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." Thompson v. Firemen's Fund Ins. Co., 798 S.W.2d 235, 238 (Tenn. 1990). Out of respect for the finality afforded to legal proceedings, this "'escape valve' should not be easily opened." Toney, 810 S.W.2d at 146. Accordingly, a party seeking relief from a judgment under Rule 60.02 bears the burden of proving that it is entitled to relief by clear and convincing evidence. McCracken, 958 S.W.2d at 795. Evidence is clear and convincing when it leaves "'no serious or substantial doubt about the correctness of the conclusions drawn.'" Goff v. Elmo Greer & Sons Constr. Co., 297 S.W.3d 175, 187 (Tenn. 2009) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). "In other words, the evidence must be such that the truth of the facts asserted be 'highly probable.'" Goff, 297 S.W.3d at 187 (quoting Teter v. Republic Parking Sys., Inc., 181 S.W.3d 330, 341 (Tenn. 2005)).

Although Rule 60.02 provides several bases on which a judgment may be attacked, the employee's motion to set aside the order approving the parties' settlement does not specifically reference any subsection of the rule. However, it is clear from the language of the motion that grounds (3) (void judgment) and (4) (the judgment has been satisfied) have not been implicated in her request. Instead, the employee uses the language of grounds (1) (mistake, inadvertence, surprise, and excusable neglect), and (2) (fraud or other misconduct). Thus, we must consider whether relief is warranted in this case under subsections (1) or (2).[7]

A.

Tennessee courts have on rare occasion permitted relief from workers' compensation settlements under Rule 60.02(1) for mistake, inadvertence, surprise, or excusable neglect. For example, in Corby v. Matthews, 541 S.W.2d 789 (Tenn. 1976), the employee received an award of benefits based upon an impairment rating of 10% to his arm. This Court set aside the judgment based upon a mistake of fact, i.e., the employee's physician gave an incorrect impairment rating when the physician "knew or should have known . . . that [the worker's] disability was much greater." Id. at 794. The Court in Corby was careful to point out, however, that "[a] mistake in estimating the extent to which an employee's disability may increase in the future" would not be sufficient to justify relief under Rule 60.02(1). Id. at 795 (emphasis omitted); see also Hooper v. Freeman Trucking, Inc., No. M2007-00794-WC-R3-WC, 2008 WL 1823307, at *5 (Tenn. Workers' Comp. Panel Apr. 22, 2008)

---

[7]In denying the employee's motion, the trial court made reference only to a lack of fraud or misconduct by the employer, which relates to ground (2). Because the employee did not limit her motion to this ground, we analyze all grounds available to determine if relief is appropriate.

(settlement set aside based upon Rule 60.02(1) because it was unclear whether the employee understood the nature of the agreement).

In the instant case, however, the employee has not met her burden of proving that she is entitled to relief based upon Rule 60.02(1). The employee's motion to set aside the order approving the settlement refers only generally to a "mistake." Her affidavit submitted in support of the motion alleges more specifically that she did not understand the meaning of maximum medical improvement when she signed her original affidavit asking the court to approve the settlement. She also claims to have relied to her detriment on statements made to her husband by the unidentified individual from the Tennessee Department of Labor. However, the documents she signed as part of the parties' agreement make it clear that she understood if she litigated her case instead of entering into a settlement that she might receive a better and/or different amount than she actually received in the settlement, or no award at all. Moreover, she acknowledged that she understood that the settlement was to be a "full and final" resolution of her claim, and further that the settlement was in her best interest. Consequently, she asked the trial court to approve the settlement.

The employee implies that she was unaware of her legal rights because she was not represented by counsel. However, it is undisputed that the employee at all times had the right to consult an attorney for independent legal advice. Moreover, if we were to find that "ignorance of the law [was] a proper ground for relief under Rule 60.02, . . . it is hard to conceive how any judgment could be safe from assault on that ground." Food Lion, Inc. v. Washington County Beer Bd., 700 S.W.2d 893, 896 (Tenn. 1985). In any event, a mistake of law, to the extent the employee asserts one stemming from her decision not to secure counsel, is not a basis for relief under Rule 60.02. Spruce v. Spruce, 2 S.W.3d 192, 195 (Tenn. Ct. App. 1998). We conclude that the employee has presented no basis for relief under Rule 60.02(1).

B.

The employee also asserts that the erroneous information that her husband purportedly received from the Tennessee Department of Labor, namely that her benefits were the maximum permitted by law, constitutes fraud, misrepresentation, or other misconduct for purposes of Rule 60.02(2). However, that information cannot be imputed to the employer in this case. The employer did not refer the employee or her husband to the Department of Labor. Nor did the employer have any control over the questions that the employee's husband might ask or the person or persons to whom those questions might be put. There is no indication in the record that the employer was even aware that the employee's husband sought information from the Department of Labor. To penalize the employer under these circumstances would be fundamentally unfair.

It also appears that nothing in the documents prepared by the employer is in any way misleading, much less fraudulent. See Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 311 (Tenn. 2008) (A claim of fraud requires proof that (1) the defendant made a representation of an existing or past fact; (2) the representation was false when it was made; (3) the representation involved a material fact; (4) the defendant made the representation with knowledge that it was false or did so recklessly; (5) the plaintiff reasonably relied on the representation; and (6) the plaintiff was damaged by relying on the representation.). To the contrary, those documents clearly and accurately explained to the employee the settlement process, including that she could personally appear and explain to the judge the nature of her injury and the terms of the settlement, yet she expressly elected to have the settlement presented in her absence. Again, it is undisputed that the employee at all times had the right to consult an attorney for independent legal advice. She elected not to, which was her prerogative.

In short, the employee has failed to provide *any* evidence, much less evidence that is clear and convincing, that the employer engaged in fraud, was misleading, or otherwise did anything improper. Accordingly, to the extent the trial court denied relief based upon Rule 60.02(2), that denial was not an abuse of discretion.

C.

In addition to the grounds for relief contained in Rule 60.02(1) and (2), subsection (5) of the rule provides that a court may relieve a party from a final judgment for "any other reason justifying relief from the operation of the judgment." Relief under Rule 60.02(5) is appropriate in cases involving extraordinary circumstances or extreme hardship. Federated Ins. Co. v. Lethcoe, 18 S.W.3d 621, 624 (Tenn. 2000). In one of the few workers' compensation cases deemed to have met this standard, Brown v. Consolidation Coal Co., 518 S.W.2d 234 (Tenn. 1974), relief was granted under Rule 60.02(5) after it was discovered that the court's judgment awarded benefits based upon an incorrect compensation rate. The Court in Brown explained that "[e]quity, justice, reason and a proper concept of the role of the courts in adjudicating workers' compensation cases dictate the necessity of correcting" the error. Id. at 238. In another case, Kirk v. St. Michael Motor Express, Inc., No. M2007-01058-WC-R3-WC, 2008 WL 4072053 (Tenn. Workers' Comp. Panel Sept. 2, 2008), relief was granted under Rule 60.02(5) because the amount of disability was not stated in the parties' agreement, the benefits to be received were not commensurate with the worker's anatomical impairment, and the agreement contained a provision regarding future medical benefits which "approach[ed] unconscionableness." Id. at *6.

Aside from these rare instances, our courts have disfavored the application of Rule 60.02(5) in workers' compensation cases, especially when the parties have settled their

dispute. Indeed, we have previously expressed the view "that where a party agrees to settle a workers' compensation claim, and the trial court approves the settlement, the settling party is generally not entitled to relief pursuant to Rule 60.02(5)." Lethcoe, 18 S.W.3d at 622. The rationale for this view is that "reopening workers' compensation agreements frustrates legitimate goals of judicial economy and finality of settlements." Id. at 625. Accordingly, the law is clear that Rule 60.02(5) "'is not to be used to relieve a party from free, calculated, and deliberate choices [it] has made.'" Id. (quoting Banks, 817 S.W.2d at 19) (alteration in original). This is true even when there is a post-judgment increase in disability. See, e.g., Underwood, 854 S.W.2d at 98 (given the importance of finality, relief under Rule 60.02(5) is available in "narrow circumstances," and the parties assume the risk that the worker's disability may change in the future); Nails v. Aetna Ins. Co., 834 S.W.2d 289, 294 (Tenn. 1992) (increased disability is not an "extraordinary circumstance" to warrant relief under Rule 60.02(5)). As this summary of the law reveals, a party attempting to have an order set aside under Rule 60.02(5) faces a difficult task.

Turning to the employee's arguments, she contends that relief is appropriate under Rule 60.02(5) because (1) she was unrepresented by counsel at the time she signed the settlement documents, (2) she was not given notice of the time and place where the employer would ask the court to approve the settlement, and (3) she did not appear personally before the judge who approved the settlement. We are not persuaded that any of these reasons, either by themselves or taken together, warrant relief under Rule 60.02(5) based upon the record before us.

First, with respect to being unrepresented by counsel, we again observe that the employee at all times had the right to consult an attorney for advice, but elected not to. Obviously, parties are free to avoid hiring a lawyer, taking depositions, arranging for court reporters, securing medical experts, and incurring other litigation-related expenses if they wish. The employee here made that choice and, having done so, cannot complain about it nearly six months later.

Regarding not having the opportunity to appear before the court approving the settlement, we note that the employee executed an affidavit which specifically requested that the court approve the settlement in her absence. We are not inclined to assign error to the trial court for taking the very action that the employee affirmatively requested. In any event, a personal appearance by an employee is not required under Tennessee Code Annotated section 50-6-206 to procure approval of a settlement. Thompson, 798 S.W.2d at 238. Although we have not interpreted the statute to require a personal appearance in every case, we have noted that "the better practice would clearly include personal examination by the trial judge." Thompson, 798 S.W.2d at 238. A personal appearance would also likely spare parties the added expense incurred in proceedings like the instant one.

Although the employee acknowledges that a personal appearance is not required for approval of a settlement, she relies upon Wilkinson v. Johnson City Shale Brick Corp., 299 S.W. 1056 (Tenn. 1927), modified on other grounds, 2 S.W.2d 89 (Tenn. 1928), for the proposition that notice of when the settlement will be presented to the court for approval is required. It is true that the Court in Wilkinson stated that "where a claimant is not represented by counsel, the circuit judge . . . should, at least, require notice to be served on the employee, stating the time and place when the employer would ask the court to make their agreement the judgment of the court." 299 S.W. at 1057. It is also true, however, that the Wilkinson Court made this observation in the context of highly unusual circumstances – the employee did not realize that he was executing a release of his claim, knew nothing about its presentation to a court for approval, no judgment was actually entered by the court, and the amount settled for was "shocking to the conscience of the court and was fraudulent." Id. at 1056-57. The circumstances before us today could not be more different, as the settlement process was clearly explained to the employee, in writing, including that she could personally appear and explain to the judge the nature of her injury and the terms of the settlement or, in the alternative, litigate her claim. In addition, there is no hint of fraud or other circumstance that might remotely be "shocking to the conscience of the court" regarding the way in which the employer went about resolving the claim. Further, the employee plainly acknowledged in her affidavit her understanding that she was settling her case, and the terms were clearly spelled out.

Although Wilkinson does not compel the result that the employee seeks given the circumstances before us, we are not inclined to completely abandon Wilkinson's observation regarding notice to the employee of when and where a settlement will be presented, for there may be instances where that factor could be key, especially if the employee has expressed some inclination to attend the hearing or the employer has done a poor job of explaining the settlement process to the employee. It seems to us that employers could easily avoid the expense of defending proceedings like the present one by simply giving such notice. As we have found, however, the failure to give such notice is not fatal in this particular case.

The employee also relies upon Dennis v. Erin Truckways, Ltd., 188 S.W.3d 578 (Tenn. 2006). In that case, this Court affirmed the trial court's decision to set aside a settlement approved by the Department of Labor based upon a workers' compensation specialist's failure to perform statutorily imposed duties. Dennis did not involve a settlement approved by a court, however, and we expressly declined in that case to analyze whether relief would have been proper under Rule 60.02. Id. at 589. Thus, Dennis is not helpful in resolving the present case.

D.

Finally, we address the employee's rather vague contention that she is entitled to relief under Rule 60.02 because the settlement did not result in her receipt of substantially the benefits to which she is entitled. The employee relies upon Tennessee Code Annotated section 50-6-206(a)(1), which states that "[i]t shall be the duty of the judge . . . to examine the proposed settlement to determine whether the employee is receiving, substantially, the benefits provided by this chapter."[8] We are not persuaded that the employee is entitled to have the settlement set aside on this basis either.

First, although the employee disparages the conclusions of Dr. Garside, she presented no medical evidence that those conclusions were incorrect. We are not inclined to speculate about what the medical evidence might have established had the parties not settled or what evidence might be presented if the settlement were to be set aside. Second, the employee executed an affidavit which clearly acknowledged her belief that the settlement was in her best interests and that she was voluntarily relinquishing her right to litigate her claim. It is thus reasonable to conclude that the employee believed that the terms of the settlement were fair at the time she committed to resolving her claim. Third, the parties settled for 26% permanent partial disability to the body as a whole. The trial court's order, which was signed by the employee, recited that she retained a 15% permanent physical impairment, her medical bills totaling $43,029.45 had been paid in full, and that she was entitled to a lump sum of $71,451.40, which represented a vocational impairment of 26% to the whole body or 1.73 times the medical impairment rating. The settlement thus exceeded the 1.5 cap on benefits

---

[8]The employee makes no argument regarding the meaning of the phrase "receiving, substantially, the benefits provided by this chapter" as used in Tennessee Code Annotated section 50-6-206(a)(1). We construe the phrase to mean simply that the employee is being paid approximately what the workers' compensation statutes provide for. This interpretation is consistent with the flexibility inherent in trying to negotiate a mutually reasonable resolution of a case. It appears to us that, as a way of assisting the trial court to discharge its responsibility under the statute, the parties may wish to submit to the trial court the information required by the Department of Labor in approving settlements. See Tenn. Code Ann. § 50-6-206(c)(5) (factors such as the degree of medical impairment, the date the employee reached maximum medical improvement, whether the employee has returned to work for the employer, the employee's age, education, skills and training, local job opportunities, and the ability of the employee to work at types of employment available in his/her disabled condition). Trial courts may, in their discretion, require that the parties provide such information before deciding whether to approve a settlement. Particularly where a trial court elects to conduct a hearing in the absence of an employee, the inclusion of such information is helpful, and may help avoid later questions such as those raised in this case.

-13-

contained in Tennessee Code Annotated section 50-6-241(d)(1)(A) (2008).[9] Future medical benefits were held open.

In light of these circumstances, we cannot find that the employee did not receive substantially the benefits afforded under the workers' compensation statutes. Although the settlement *might* have been on the low end depending on what medical or other evidence the parties *might* have presented, we decline to speculate on such a key point. The employee herself makes no specific suggestion regarding what her benefits should have been so as to satisfy section 50-6-206(a)(1).[10] Nor could she, it seems, given that no medical evidence was presented apart from that set forth above. This issue has no merit.

*Frivolous Appeal*

The employer asks that this be deemed a frivolous appeal. We are not inclined to grant the employer's request.

A frivolous appeal is one that is "devoid of merit such that it had no reasonable chance of succeeding." Clark v. Nashville Mach. Elevator Co., 129 S.W.3d 42, 50 n.4 (Tenn. 2004); see also Riley v. Aetna Cas. & Sur., 729 S.W.2d 81, 84 (Tenn. 1987) (penalty for a frivolous appeal may be appropriate when the appeal is "completely lacking in merit"). There are two statutes that empower appellate courts to award damages against parties whose appeals are frivolous or brought solely for delay. The first statute, Tennessee Code Annotated section 50-6-225(i), provides that "[w]hen a reviewing court determines . . . that the appeal of an employee is frivolous, a penalty may be assessed by the court, without remand, against the appellant for a liquidated amount." The second statute, Tennessee Code Annotated section 27-1-122 (2000), states that when it appears to a reviewing court that the appeal was "frivolous or taken solely for delay, the court may, either upon the motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal." These statutes reflect the view that successful parties should not have to bear the costs and vexation of baseless appeals. See Clark, 129 S.W.3d at 50 n.4; Davis v. Gulf Ins. Group, 546 S.W.2d 583, 586 (Tenn. 1977). "Nor should this Court . . . be saddled with such cases." Davis, 546 S.W.2d at 586. That said, however, care must be taken by the courts

---

[9]Because the employee did not return to work, she was eligible to receive more than 1.5 times the impairment rating. See Tenn. Code Ann. § 50-6-241(d)(2)(A).

[10]When the motion to set aside the settlement was heard by the trial court, the judge asked the employee's lawyer, "what is your opinion of the maximum she could have received?" The lawyer did not answer the question other than to say that "it's not 1.5 times the physical impairment rating." Nor does the employee's brief filed in this Court address the issue with any specificity.

to avoid discouraging legitimate appeals.  Consequently, imposing a penalty for a frivolous appeal is a remedy which is to be used only in obvious cases of frivolity and should not be asserted lightly or granted unless clearly applicable  – which is rare.  See, e.g., Wells v. Sentry Ins. Co., 834 S.W.2d 935, 938-39 (Tenn. 1992); Davis, 546 S.W.2d at 586.

Although we have not resolved the issues before us in the employee's favor, we are not persuaded that the instant appeal is frivolous or was taken solely for the purpose of delay. We therefore decline to impose any penalty upon the employee.

**CONCLUSION**

The employee has not shown that the trial court's decision to deny relief from the parties' settlement under Tennessee Rule of Civil Procedure 60.02 amounts to an abuse of discretion.  Neither has she presented any proof that the settlement into which she entered did not provide substantially the benefits anticipated under the workers' compensation statutes.  However, the employee's pursuit of this appeal is not frivolous, and no penalty should be assessed.  The judgment of the trial court is affirmed in all respects.  The costs are taxed to Patricia Henderson and her surety, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE

-15-