IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 1, 2023

IN RE GABRELLA T.

Appeal from the Circuit Court for Shelby County
No. CT-3685-22      Damita J. Dandridge, Judge

_____

No. W2023-00317-COA-R3-JV
_____

Syeda C.[1] ("Mother") and Hosea T. ("Father")[2] (Mother and Father collectively, "Parents") are the biological parents of Gabrella T. (the "Child"). The Tennessee Department of Children's Services ("DCS") petitioned the Juvenile Court of Memphis and Shelby County (the "Juvenile Court") for an adjudication that the Child was dependent and neglected in the care of Parents and for an award of temporary legal custody of the Child to DCS. The Juvenile Court granted DCS's petition, adjudicated the Child dependent and neglected, and awarded temporary legal custody of the Child to DCS. Mother appealed the Juvenile Court order to the Shelby County Circuit Court (the "Circuit Court"). Mother failed to appear at the hearing in the Circuit Court on her appeal; upon oral motion made by DCS, the Circuit Court dismissed Mother's appeal. Mother now appeals to this Court. Upon thorough review of the record, we affirm the judgment of the Circuit Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;
Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J, W.S., joined.

Ada Johnson, Memphis, Tennessee, for the appellant, Syeda C.

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Jordan K. Crews, Senior Assistant Attorney General; and Kirk Stewart, Assistant General Counsel, for the appellee, Tennessee Department of Children's Services.

---

[1] In actions involving juveniles, it is this Court's policy to protect the privacy of children by using only the first name and last initial, or only the initials, of the parties involved.

[2] Father is not participating in this appeal.

# OPINION

## I. Background

The Child was born to Parents in October 2018 and lived with them until the Child was placed in the temporary legal custody of DCS by order of the Juvenile Court on December 10, 2019. On that date, DCS filed a Petition asking the Juvenile Court to adjudicate the Child dependent and neglected and to award temporary legal custody of the Child to DCS. In its Petition, DCS averred the following: In addition to the Child, another minor child, Angel T.,[3] was born to Parents in September 2019. Angel T. died on November 18, 2019, but lived with Parents and the Child until that time. During the investigation into Angel T.'s death, Mother reported that both Angel T. and the Child had a cold for about four or five days prior. She stated that she gave both children Mucinex for their colds before laying them down to sleep on the night of November 17, 2019. Parents reported that they, Angel T., and the Child all slept together on a queen-sized air mattress, with the children laying at one end of the mattress and Parents at the other end of the mattress, which was their normal sleeping arrangement. Parents further reported that in the early morning hours of November 18, 2019, Mother found Angel T. face down on the floor, unresponsive, and not breathing. Father reported that she was found with dried up blood on her nose and was cold. It was unknown whether anyone rolled over on Angel T. Parents called emergency services, and an ambulance and the Memphis Police Department responded. Father attempted chest compressions until the ambulance arrived. Angel T. was transported to Methodist South Hospital in Memphis and pronounced dead at 6:50 a.m. At the time of Angel T.'s death, Parents' home was "very unkempt and dirty as there [was] trash all over the home," and marijuana and drug paraphernalia were found in the home. Mother submitted to a drug screen and tested positive for THC.

Five days later, on November 23, 2019, Mother transported the Child to Methodist South Hospital. For unknown reasons, the Child became unresponsive between the lobby of the hospital and the emergency room. The Child was reported to be underweight for her age and "was covered in vomit and dirt, her nails were unkempt, and she was not in a diaper." Law enforcement was called to the hospital and, according to DCS, during an investigation:

> Mother said [the Child] had a cold and she was giving her 1ml of herbal [M]ucinex, but was advised to stop the medication and let it run its course. Mother said [the Child] had a cough but no other signs of being sick. Mother said [the Child] was sitting in a bouncer drinking juice and began to constantly cough. [The Child] threw up mucus and was struggling to catch her breath. Mother and Father immediately called [the paternal grandmother]

---

[3] The record at times spells this child's name as "Angle" and at other times as "Angel." We adopt the spelling used by the Report of Investigation by County Medical Examiner contained in the record.

who told them to take [the Child] to the hospital. Mother said [the Child] threw up in the car and began to cry in the car before getting to the hospital. Mother believed [the Child] choked on juice because she was drinking it fast from the bottle. Mother also reported [the Child] was seen biting [the] nipple and may have bitten off a piece and choked on it. Mother said [the Child] was not seen on the floor and denied putting anything in her mouth. Mother stated [the Child] was in her bouncer when she became ill and she was not supervised.

Mother also stated that she had been in special education classes in school and at one point had received disability income. She was unsure what grade level she had completed, but she estimated it was ninth grade. During a Child and Family Team Meeting on December 4, 2019, in which Mother participated:

The team was concerned about Mother's ability to comprehend and understand what was being asked of her and what was being said. The team had to stop several times to break down what was being asked of her. [Paternal grandmother] also tried to break down the information for Mother. Finally, [paternal grandmother] stated she would explain what was going on to Mother later and Mother appeared relieved and remained quiet.

DCS reported that it had previously received a referral in November 2018 alleging a lack of supervision of the Child by Mother. Services were recommended by DCS at that time.

DCS averred that it was contrary to the welfare of the Child to remain in Parents' home and asked that the Child be placed in the temporary legal custody of DCS and be adjudicated dependent and neglected. Attached to the Petition was a "Notice of Right to be Represented by an Attorney" that, *inter alia*, admonished Parents: "No matter what happens, if you intend to contest this matter and you are not incarcerated, do not fail to appear in court at the time and date specified." Based upon these averments, the Juvenile Court entered an *Ex Parte* Protective Custody Order finding probable cause to believe that the Child was dependent and neglected pursuant to Tennessee Code Annotated section 37-1-102(b)(13) and that there was no available alternative less drastic than removal from Parents' legal custody that would reasonably and adequately protect the Child's health and safety pending a hearing on the Petition. Accordingly, the Juvenile Court placed the Child in the temporary legal custody of DCS pending further order of the Juvenile Court, granted Parents supervised visitation with the Child, and scheduled the matter for a preliminary hearing.

A preliminary hearing was held December 11, 2019, and a written order memorializing that hearing was entered February 6, 2020, though it had purportedly been

signed by the Juvenile Court Magistrate on the day of the hearing.[4]  Mother, through her appointed counsel, waived the preliminary hearing and reserved her right to request one at a later date.  The Juvenile Court found that the Protective Custody Order should be upheld and that the Child should remain in the temporary legal custody of DCS pending a final hearing.  The Juvenile Court also relieved DCS of making reasonable efforts to place the Child with Mother due to the allegations that Mother failed to supervise the Child.

An adjudicatory hearing before the Juvenile Court Magistrate occurred on April 15, 2021; a written order memorializing this hearing was entered on February 24, 2022.  Mother was present for and testified at the hearing.  The Magistrate found clear and convincing evidence that the Child was dependent and neglected pursuant to Tennessee Code Annotated section 37-1-102(b)(13)(B) "due to the [P]arents limited mental capacity" and pursuant to section 37-1-102(b)(13)(F) "due to cosleeping."  The Juvenile Court ordered that the Child remain in the legal and physical custody of DCS.  On April 29, 2021, Mother requested a hearing before the presiding judge of the Juvenile Court.

A rehearing before a Special Judge for the Juvenile Court occurred on March 7 and March 14, 2022; a written order memorializing this hearing was signed by the Special Judge on August 19, 2022, and entered August 30, 2022.  Mother was present for the rehearing.  The Special Judge found that the Child has special needs, is developmentally delayed, and attends nine medical visits per month, including visits with a neurologist, a pediatrician, "a doctor for genetic testing," a dermatologist, physical therapy, occupational therapy, and behavioral therapy. The Special Judge further found that "due to their limited mental capacity[, Parents] are unable to care for the [C]hild[;]" "[M]other has been diagnosed with schizophrenia and testimony was that she was unable to comprehend what doctors say about the [C]hild and unable to understand[] what the [C]hild need[s;]" "[M]other has only been to two of the [C]hild's doctor visits[;]" and the "[C]hild has been exposed to domestic violence[, i]n early 2020 the [paternal] grandmother was called to the Budget Inn to come get the [C]hild when [M]other and [F]ather were taken to jail for domestic violence."  Based upon these and other findings, the Juvenile Court found clear and convincing proof that the Child was dependent and neglected pursuant to Tennessee Code Annotated section 37-1-102(b)(27)(B) and (F) and retained custody of the Child with DCS.  On April 7, 2022, Mother appealed the final judgment of the Juvenile Court to the Circuit Court.

A hearing on Mother's appeal to the Circuit Court was scheduled for January 30, 2023 at 10:00 a.m.  Mother's counsel, Ada Johnson, appeared, and the following exchange occurred:

---

[4] There were a number of lengthy delays throughout this case between when hearings occurred and the resulting orders were entered, this delay being one of the shortest.  There is no explanation in the record for these delays.

MR. STEWART [counsel for DCS]: . . . Mother is not present, and we don't believe she will be present . . . So if Mother is not here, we are going to ask that her appeal be dismissed and that the order of the juvenile court stand, as ordered.

\* \* \*

MS. JOHNSON: . . . I was speaking to my client. She is alleging that she is at the hospital with another child.[5] She said she is en route. But I know it is, what, twenty minutes after, and court started at 10. I told her that court hadn't started at that moment, but she might be en route, but I know Counsel are not willing to wait all day on my client if it is not pertaining to this case, so Your Honor, I just basically told her that the case is about to start.

So I don't know if she is going to be here before they make a motion [to dismiss] or not.

[CIRCUIT] COURT: So when was the last time you had contact with her?

MS. JOHNSON: I called – she was already calling me, but I missed the call because I was on another Zoom matter. But about five minutes ago she said she was at the hospital with another – not the baby in this case, but another case.

\* \* \*

[CIRCUIT] COURT: All right, then. So everyone else is in agreement that the Mother is not here to go forward, per her attorney.

\* \* \*

[CIRCUIT] COURT: . . . All right, then. We are going to sustain the motion, then, and let everything stay status quo.

The written order was entered February 13, 2023, granting DCS's oral motion to dismiss Mother's appeal to the Circuit Court for failure to prosecute and remanding the matter to the Juvenile Court.

Mother appealed the dismissal order to this Court.

## II. Issue Presented on Appeal

Mother raises one issue on appeal, which we have restated slightly: Whether the Circuit Court erred in dismissing Mother's appeal for failure to prosecute.[6]

---

[5] The record reflects that another child was born to Mother during the pendency of this case.

[6] Mother frames this issue as "[w]hether it was reversible error when the Judge dismissed the Appellant's Juvenile Appeal for arriving late to court[.]" There is nothing in the record, however, to indicate

## III. Analysis

An appeal from a final order in a dependency and neglect proceeding "may be made to the circuit court that shall hear the testimony of witnesses and try the case de novo." Tenn. Code Ann. § 37-1-159(a). However, it is well-settled that:

> Trial courts possess inherent, common-law authority to control their dockets and the proceedings in their courts. Their authority is quite broad and includes the express authority to dismiss cases for failure to prosecute or to comply with the Tennessee Rules of Civil Procedure[7] or the orders of the court. Because decisions to dismiss for failure to prosecute are discretionary, reviewing courts will second-guess a trial court only when it has acted unreasonably, arbitrarily, or unconscionably.

*Hodges v. Att'y Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000) (internal citations omitted). "A trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case 'on a clearly erroneous assessment of the evidence.'" *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). "The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court." *Id.* (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)). "Indeed, when reviewing a discretionary decision by the trial court, the 'appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision.'" *Id.* (quoting *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

Mother complains that her appeal from the Juvenile Court to the Circuit Court "was never heard on the merits" and cites two unpublished opinions of this Court in support of her argument. Those opinions are inapposite to this case. In *In re Dannye J.C.*, No. E2011-01066-COA-R3-JV, 2012 WL 112571 (Tenn. Ct. App. Jan. 12, 2012), a mother appealed to the circuit court a juvenile court order finding her guilty of severe child abuse.

---

that Mother ever arrived to court – late or otherwise – on the day her appeal was set to be heard by the Circuit Court.

[7] This Court recognizes that dependency and neglect proceedings are governed not by the Tennessee Rules of Civil Procedure, but instead by the more lenient Tennessee Rules of Juvenile Practice and Procedure. *See* Tenn. R. Juv. P. 101(b). Even the Rules of Juvenile Practice and Procedure provide for sanctions against a party or party's attorney who fails to obey a scheduling order or fails to appear at a scheduling conference. Tenn. R. Juv. P. 111(c). "The scheduling order may include, but is not limited to, the dates of . . . adjudication . . . hearings." *Id.*, Advisory Comm'n Cmt. Furthermore, the Advisory Commission Comment to this Rule refers the reader to "Rule 37.02 of the Tennessee Rules of Civil Procedure for guidance regarding sanctions[,]" *id.*, and Rule 37.02(C) expressly provides for the sanction of "[a]n order . . . dismissing the action or proceeding or any part thereof[.]"

2012 WL 112571, at *1. However, the mother was arrested and potentially deported prior to the circuit court hearing on her appeal. *Id.* at *1, 3. In light of this, the mother's attorney filed a motion to excuse her client from attending the court proceedings and seeking a method to continue prosecuting the appeal despite her client's inability to attend the proceedings. *Id.* at *1. Instead, the circuit court dismissed the appeal, "stating th[at it] had considered the fact that there was a five day trial in [j]uvenile [c]ourt and a 45 page Order produced by the [m]agistrate, and that *since the case turned on the mother's credibility*, who denied child abuse but could not appear for trial, then the appeal could not be prosecuted." *Id.* at *2 (emphasis added). This Court concluded that there was no basis to dismiss the appeal without a hearing, especially in light of the fact that the mother had not testified at the juvenile court hearing. *Id.* Thus, we reversed the circuit court's order of dismissal. *Id.*

Similarly, in *Kissick v. Kallaher*, No. W2004-02983-COA-R3-CV, 2006 WL 1350999 (Tenn. Ct. App. May 18, 2006), a mother appealed to the circuit court a juvenile court order dismissing a petition for dependency and neglect. 2006 WL 1350999, at *1–2. The circuit court dismissed the appeal "without a hearing or the presentation of any evidence in the matter, but only upon statements of counsel and the guardian ad litem in chambers." *Id.* at *2. This Court vacated the judgment of the circuit court, concluding that the mother was "entitled to a *de novo* trial of her dependency and neglect petition in the circuit court." *Id.* at *3.

Conversely, unlike *In re Dannye J.C.* and *Kissick* where the mothers were never given an opportunity to have their appeal heard, in this case Mother had an opportunity to have her appeal heard but failed to take advantage of that opportunity. We cannot ignore the fact that nothing in the record in this case indicates that Mother ever appeared – late or otherwise – at the Circuit Court on the hearing date, nor that Mother's counsel ever opposed the motion to dismiss, requested a continuance, or filed any post-judgment motion seeking to alter or amend the dismissal order. "[A] party is not entitled to relief if that party is 'responsible for an error or . . . failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.'" *Akers v. Prime Succession of Tenn., Inc.*, 387 S.W.3d 495, 508 (Tenn. 2012) (quoting Tenn. R. App. P. 36(a)).

Instead, this case is analogous to *In re Lillian F.W.*, No. M2012-01450-COA-R3-CV, 2013 WL 5498111 (Tenn. Ct. App. Sept. 30, 2013). In that case, a father appealed to the circuit court a juvenile court's grant of a dependency and neglect petition. The circuit court dismissed the father's appeal when he failed to appear for the hearing. *In re Lillian F.W.*, 2013 WL 5498111, at *11. This Court affirmed the circuit court's dismissal of the father's appeal, concluding:

> In this appeal, Father argues that the [c]ircuit [c]ourt was compelled
> to conduct a trial on the dependency and neglect petition, primarily because

the relevant statute says the circuit court "shall hear the testimony of witnesses and try the case de novo." Tenn.Code Ann. § 37-1-159(a). That statute merely established the procedure to be used, it does not command the court to try the case when the interested party has not proceeded with it. Father had filed the appeal, but he did not appear on the date scheduled for trial. We find no error in the trial court's dismissing that appeal on the basis of failure to prosecute.

*Id*. Mother makes the same argument in this case. Just as we found no error in the circuit court's dismissal of the father's appeal in *In re Lillian F.W.*, we find no error in the Circuit Court's dismissal of Mother's appeal in this case when she failed to appear for the hearing.

## CONCLUSION

The judgment of the Circuit Court is affirmed. Costs on appeal are assessed to the Appellant, Syeda C., for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE