IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 14, 2012

# RALPH WADKINS & WIFE, JULIA WADKINS  v. TANYA WADKINS

**Direct Appeal from the Chancery Court for Montgomery County**

**No. MCCHCVDR111          Laurence M. McMillan, Jr., Chancellor**

_____

**No. M2012-00592-COA-R3-CV - Filed December 14, 2012**

_____

This is a grandparent visitation case, in which Mother appeals the trial court's award of specific visitation to Appellee grandparents under Tennessee Code Annotated Section 36-6-306.  Specifically, Mother argues that the trial court incorrectly determined that she opposed visitation, that she had failed to rebut the presumption of substantial harm under Tennessee Code Annotated Section 36-6-306(b)(4), and that grandparent visitation was in the children's best interests.  Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Sharon T. Massey, Clarksville, Tennessee, for the appellant, Tanya Wadkins.

**MEMORANDUM OPINION**[1]

Tanya Wadkins ("Appellant," or "Mother")  is the biological parent of the two minor

_____

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

children at issue in this case (dates of birth May 19, 2002, and December 17, 2005). Ralph and Julia Wadkins (together, the "Grandparents" or "Appellees") are the paternal grandparents. The children's biological father, Thomas Wadkins, Grandparents' biological child, died on September 27, 2010.

On February 3, 2011, the Grandparents filed a petition to establish visitation rights with the minor children in the Chancery Court for Montgomery County. Therein, the Wadkinses assert, in relevant part, that:

> 3. [The Grandparents] have had a significant and active role in the children's lives until recently, when [Mother] severed the relationship after Father died.
>
> 4. The children and [the Grandparents] have maintained a significant relationship for a period of more than twelve months immediately preceding the severance of the relationship.
>
> 5. This relationship was severed by [Mother] for reasons other than abuse or presence of a danger of substantial harm to the children and the severance of this relationship is likely to occasion substantial emotional harm to the children.
>
> *               *               *
>
> 8. The [Grandparents] have often functioned as [] caregiver[s] to the effect that a cessation of the relationship could interrupt provision of the daily needs of the children and thus occasion physical and emotional harm.
>
> *               *               *
>
> 13. [The Grandparents'] visitation is in the best interests of the children and reasonable visitation should be ordered.
>
> *               *               *
>
> 15. The Natural Father was deployed for months at a time, on several occasions, and [the Grandparents'] role has been particularly crucial to their upbringing during the last several years.

16.	The children have significant emotional ties to the [Grandparents]. . . .

\*	\*	\*

18. [Mother] and Natural Father were engaged in pending divorce proceedings at the time of Father's death, and have a history of domestic abuse between the two. There is much hostility between [Mother] and the [Grandparents]. [Mother] refuses to foster the necessary relationship between [the Grandparents] and the children as evidenced in [Mother's] letter revoking previously consented contact between the parties.

The Grandparents attached a letter, dated January 14, 2011, to their petition. The letter, from Mother, states, in pertinent part:

Re: Revocation of Privileges to Enter Property or Contact

Dear Mr. and Mrs. Wadkins:

You are hereby advised that I am revoking my consent and your privilege to enter on or in my property. . . .

\*	\*	\*

I am further admonishing both of you to cease from contacting me or my children by telephone, internet email, regular mail or any other manner of communication due to your previous and continued harassing communication.

On February 24, 2011, Mother filed her answer, in which she denies the material allegations made in the Grandparents' petition. Although Mother admits that the "relationship has been severed," she denies "that it was severed for reasons other than abuse, presence of danger, etc., or that it will result in substantial harm to the children." Instead, Mother avers that: (1) Appellee Mr. Wadkins "has previously assaulted" Mother; (2) the Grandparents "unlawfully withheld both children at their home and refused to return them," so that "[p]olice intervention was necessary; (3) the Grandparents have disparaged [Mother] to the children, telling them, among other things, that "your mother doesn't love you;" (4) the [Grandparents] have made harassing and vindictive telephone calls [to Mother] and have engaged in "in person harassment" toward/against her.

-3-

By order of March 11, 2011, a guardian ad litem was appointed to represent the children. The matter was continued several times before a hearing took place on August 31, 2011 and on December 11, 2011. A transcript of the December 11, 2011 proceeding is included in our appellate record; as to the August 31, 2011 portion of the hearing, on May 3, 2012, Mother filed a Tennessee Rule of Appellate Procedure 24(c) statement of the evidence, which is included, unopposed, in our record.

On January 5, 2012, the trial court entered an order, providing the Grandparents specific visitation with the minor children. The order states, in relevant part, that:

> 1. This is a petition for grandparent visitation filed by the parents of the deceased father. The petition is contested.
>
> 2. Pursuant to T.C.A. §36-6-306(b)(4), a rebuttable presumption of substantial harm to the children based upon the cessation of the relationship between the children and their grandparents exists because the grandparents seeking visitation are the parents of the deceased parent.
>
> 3. The court is of the opinion that the rebuttable presumption has not been overcome, and the court finds there will be substantial harm to the children if grandparent visitation is not granted.
>
> 4. Pursuant to T.C.A. §36-6-306(c), the court is obligated to take into account the factors listed in T.C.A. §36-6-307 to determine whether grandparent visitation is in the best interest of the children. The court finds that the grandparents and the children have had a lengthy and quality relationship and that there are emotional ties between the children and their grandparents. The court further finds that the preference of the [older] child for no visitation is not relevant because the child is hereby determined not to be of sufficient maturity to express such a preference. The court further finds that the grandparents were acting in good faith in filing the petition for visitation.
>
> 5. In this case it is apparent that the grandparents and the mother have a hostile relationship. This was noted by every witness who testified as well as the childrens' [sic] psychologist. The psychologist testified that the children are having emotional

-4-

difficulty with regard to the death of their father and that they have an emotional tie to their grandparents. The psychologist was of the opinion there should be several supervised visits with the children and their grandparents prior to any unsupervised visitation.

Based upon the foregoing findings, the court ordered four supervised visits between the children and the Grandparents. These visits were to take place prior to June 28, 2012. Thereafter, beginning on June 29, 2012 through July 6, 2012, the Grandparents were granted one week of unsupervised visitation. The one week of unsupervised visitation was continued on an annual basis during the week of July 4th. In addition to the one week of summer visitation, the Grandparents were granted Christmas visitation with the children, beginning on December 27 of each year from 10:00 a.m. to 8:00 p.m.

Mother appeals. She raises three issues for review as stated in her brief:

I. Whether the trial court abused his discretion in granting grandparent visitation when there was no showing of substantial harm to the children?

II. Whether the court erred in entering an order granting specific grandparent visitation when the evidence shows that visitation was not in the best interest of the children?

III. Did the court err in granting an order setting specific grandparent visitation when there was no opposition to the visitation by [Mother]?[2]

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Tenn. R. App. P. 13(d). In applying the *de novo* standard, we are mindful that "[t]rial courts are vested with wide discretion in matters of child custody and that the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." ***Hyde v. Amanda Bradley***, No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct.12, 2010) (citing ***Johnson v. Johnson***, 169 S.W.3d 640, 645 (Tenn. Ct. App. 2004)). A trial court abuses its discretion when it "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." ***Gonsewski v. Gonsewski***, 350

---

[2] We note that the Grandparents did not file a responsive brief in this appeal.

S.W.3d 99, 105 (Tenn.2011) (citing ***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011)); ***Henderson v. SAIA, Inc.***, 318 S.W.3d 328, 335 (Tenn. 2010)).  Because "[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings," appellate courts "are reluctant to second-guess a trial court's decisions." ***Hyde***, 2010 WL 4024905, at *3 (citing ***Johnson***, 169 S.W.3d at 645). Accordingly, "[i]f the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." ***Heffington v. Heffington***, No. M2009-00434-COA-R3-CV, 2010 WL 623629 (Tenn. Ct. App. Feb. 19, 2010).

Tennessee Code Annotated Section § 36-6-306 (the "Grandparent Visitation Statute") identifies certain circumstances in which grandparents are entitled to court-ordered visitation with a minor grandchild.  The Grandparent Visitation Statutes provides, in relevant part, as follows:

> (a) Any of the following circumstances, when presented in a petition for grandparent visitation to the circuit, chancery, general sessions courts with domestic relations jurisdiction or juvenile court in matters involving children born out of wedlock of the county in which the petitioned child currently resides, necessitates a hearing if such grandparent visitation is opposed by the custodial parent or parents:
>
> (1) The father or mother of an unmarried minor child is deceased;
>
> *                                    *                                    *
>
> (6) The child and the grandparent maintained a significant existing relationship for a period of twelve (12) months or more immediately preceding severance of the relationship, this relationship was severed by the parent or parents for reasons other than abuse or presence of a danger of substantial harm to the child, and severance of this relationship is likely to occasion substantial emotional harm to the child.
>
> (b)(1) In considering a petition for grandparent visitation, the court shall first determine the presence of a danger of substantial harm to the child. . . .

-6-

(A) The child had such a significant existing relationship with the grandparent that loss of the relationship is likely to occasion severe emotional harm to the child;

(B) The grandparent functioned as a primary caregiver such that cessation of the relationship could interrupt provision of the daily needs of the child and thus occasion physical or emotional harm; or

(C) The child had a significant existing relationship with the grandparent and loss of the relationship presents the danger of other direct and substantial harm to the child.

(2) For purposes of this section, a grandparent shall be deemed to have a significant existing relationship with a grandchild if:

(A) The child resided with the grandparent for at least six (6) consecutive months;

(B) The grandparent was a full-time caretaker of the child for a period of not less than six (6) consecutive months; or

(C) The grandparent had frequent visitation with the child who is the subject of the suit for a period of not less than one (1) year.

\*                                   \*                                   \*

(4) For the purposes of this section, if the child's parent is deceased and the grandparent seeking visitation is the parent of that deceased parent, there shall be a rebuttable presumption of substantial harm to the child based upon the cessation of the relationship between the child and grandparent.

(c) Upon an initial finding of danger of substantial harm to the child, the court shall then determine whether grandparent visitation would be in the best interests of the child based upon the factors in § 36-6-307. Upon such determination, reasonable visitation may be ordered.

Before turning to the substantive issues, some background on grandparent visitation is helpful. The decisions of the U.S. Supreme Court and the Tennessee Supreme Court, interpreting the federal and state constitutions, explicitly prohibit any judicial assumption that grandparent/grandchild relationships always benefit the child, as contrary to the parents' fundamental right to raise their children as they see fit. *See Troxel v. Granville*, 530 U.S. 57, 66–72, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (recognizing parents' fundamental constitutional right to make decisions on care, custody and control of children, finding trial court erred in presuming grandparent visits are in best interest of children); *Hawk v. Hawk*, 855 S.W.2d 573, 577–82 (Tenn. 1993) (recognizing parents' fundamental constitutional right, finding trial court engaged in "sentimental" commentary on grandparents and erred in "unquestioning judicial assumption" that grandparent-grandchild relationship always benefits child, basing award of grandparent visitation on that presumed benefit). In order to avoid such an assumption, the Tennessee constitution and Tennessee's grandparent visitation statute require a grandparent seeking visitation to prove, as a threshold requirement, that the child will be in danger of substantial harm if visitation is not ordered by the court. *Hawk*, 855 S.W.2d at 581; Tenn.Code Ann. § 36-6-306(b)(1). Additionally, both the federal constitution and Tennessee's grandparent visitation statute require the petitioning grandparent to show that visitation was opposed or denied in order for the court to consider ordering visitation. *Troxel*, 530 U.S. at 71 (trial court erred in giving no weight to fact that parent had assented to some grandparent visitation under certain conditions); *Huls v. Alford*, No. M2008-00408-COA-R3-CV, 2008 WL 4682219, at *7–8 (Tenn. Ct. App. Oct.22, 2008) (in light of parents' fundamental right, Tennessee grandparent visitation statute "is not implicated" unless visitation is denied or opposed). Under *Troxel*, pursuant to the federal constitution, in all phases of a proceeding on grandparent visitation, there is a presumption that a fit parent is acting in the child's best interest, and the court must accord special weight to the parent's determinations. *Troxel*, 530 U.S. at 68, 70 (plurality opinion) ("[T]here is a presumption that fit parents act in the best interests of their children.") (holding that if a fit parent's decision on grandparent visitation "becomes subjected to judicial review, the court must accord at least some special weight to the parent's own determination ").

As succinctly discussed in Marlene Eskind Moses and Jessica J. Uitto, *The Current Status of Tennessee's Grandparent Visitation Law*, Tenn. B. J., Jan. 2010, at 46, 24:

> Because of the great deference that courts give to parental decisions, when the court addresses grandparent visitation rights, it must perform a lengthy and complex three-pronged analysis. First, the grandparent seeking the court's intervention must show that one of six situations exists pursuant to Tenn. Code Ann. § 36–6–306(a). Second, the court must determine whether there is a danger of substantial harm to the child if the

child does not have visitation with the grandparent. The foregoing is based on three factors set out in Tenn.Code Ann. § 36–6–306(b)(1). In conjunction with this analysis, the court must also determine if the relationship between the child and grandparent is significant based on three more factors set out in Tenn. Code Ann. § 36–6–306(b)(2). Third, if the court finds that there is danger of substantial harm if the child does not have visitation with the grandparent, it must decide whether the visitation would be in the child's best interest based on seven factors under Tenn. Code Ann. § 36–6–307.

*Id*. (footnotes omitted). With these parameters in mind, we turn to address Mother's appellate issues.

### I. Opposition to Visitation

As noted above, the Grandparent Visitation Statute is not implicated absent a showing that the custodial parent opposed or denied the grandparents visitation. *Troxel*, 530 U.S. at 71. In her third issue, Mother contends the trial court erred in not dismissing Grandparents' petition because she allegedly did not oppose visitation . *See* Tenn. Code Ann. § 36-6-306(a); *see also* **Huls**, 2008 WL 4682219, at *8. In the context of the Grandparent Visitation Statute, a parent opposes visitation when "visitation is denied totally and when visitation is technically not opposed, but where the frequency and/or conditions imposed by the parents on the visitation are such that it equates to a denial of visitation." **Huls**, 2008 WL 4682219, at *8. However, the grandparent visitation statute "cannot not be used by grandparents who think they are entitled to more or different visitation in the absence of a finding that the parents actually or effectively 'opposed' visitation." **Huls**, 2008 WL 4682219, at *8.

From our review of the entire record, it is clear that Mother did, in fact, oppose visitation by these Grandparents. Mother admits, in her answer, that the "relationship [between the Grandparents and the children] has been severed." Mother's opposition to visitation is further evidenced by the January 14, 2011 letter that she sent to the Grandparents. As set out in full context above, the letter indicates that any attempt, on the part of the Grandparents, to visit the children will be deemed, by Mother, as a trespass. Moreover, Mother's letter indicates her intent to further deny the Grandparents' any visitation through mail and telephone contact with the children. Although Mother asserts that her opposition to the Grandparents' visitation is based upon her belief that visitation would result in abuse or harm to the children, her belief is not dispositive at this stage. Rather, it is her opposition no matter the reason that must be shown in order for the Grandparent Visitation Statute to be implicated. From the totality of the circumstances presented in this

case, the evidence clearly supports the conclusion that Mother did, in fact, oppose visitation. Therefore, the Grandparents were entitled to a hearing on their petition for visitation.

## II. Substantial Harm.

If the trial court determines, as the court did here, that a parent of the minor child is deceased and that the surviving parent opposed visitation by a grandparent, then the grandparent usually has the evidentiary burden to demonstrate that the minor child has or will experience substantial harm if grandparent visitation is not ordered. Tenn. Code Ann. § 36-6-306(b); *Hawk v. Hawk*, 855 S.W.2d 574, 577 (Tenn. 1993). However, during its 2010 session, the Tennessee General Assembly amended Tennessee Code Annotated Section 36-6-306 to create a new "rebuttable presumption of substantial harm to the child based upon the cessation of the relationship between the child and grandparent" when the child's parent is deceased and the grandparent seeking visitation is the parent of the deceased parent.[3] The rebuttable presumption in Tennessee Code Annotated Section 36-6-306(b)(4) took effect on May 26, 2010, and so is applicable to the instant case. The May 26, 2010 amendment, adding section (b)(4) to the Grandparent Visitation Statute, shifted the burden of proof concerning the second-prong of the analysis, i.e., whether there is danger of substantial harm, from the grandparent to the opposing parent. Under the amended statute, if the child's parent is deceased, and that deceased parent is the child of the grandparent, the grandparent now has a rebuttable presumption of substantial harm to the child based upon the cessation of the relationship between the child and grandparent. Accordingly, the burden to rebut the presumption of substantial harm in this case falls to Mother. We note that the harm to the child must be "a real hazard or danger that is not minor, trivial, or insignificant." *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001). It must be "sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not," but it "need not be inevitable." *Id*. Furthermore, the petitioner must prove harm to the specific child[ren] that [are] the subject of the suit, not children in general. *Ottinger v. Ottinger*, No. E2003-02893-COA-R3-CV, 2004 WL 1626253, at *5 (Tenn. Ct. App. July 21, 2004). As set out above, the trial court correctly applied the presumption and then specifically found that Mother had failed to meet her burden to negate that presumption. Upon review of the record, we agree.

The focus of Mother's proof can be divided into two broad categories: (1) the Grandparents' living conditions and (2) the Grandparents' statements and actions

---

[3] Act of May 6, 2010, ch. 957, § 1, 2010 Tenn. Pub. Acts 482, 482 (codified at Tenn. Code Ann. § 36–6–306(b)(4) (2010)).

against/towards Mother. Both Mother, and her witnesses, testified that Grandparents' home is unclean and disorganized, and that the Grandparents' smoke in the home to the detriment of the children. Specifically, there is testimony concerning a full-grown pig living in Grandparents' home, and the pig being allowed to defecate inside the home without the waste being picked up. There is also proof that the youngest child has suffered minor injuries while in Grandparents' home, including a cut on his tongue and bruising and cuts from falling off furniture. On one occasion, Mother testified that the youngest child was bitten by fire ants while in the care of Grandparents. The children's maternal grandmother also testified that she had seen the children's legs covered with flea or mosquito bites upon their return from Grandparents' home. The children's psychologist, Dr. Janice Martin, testified that the older child has concerns that the younger child is not properly supervised while in the Grandparents' home. As noted above, the trial court specifically held that the child's testimony was not probative in this case, as the court found him too immature to formulate a valid opinion. However, the foregoing evidence is refuted in the record. Although the Grandparents' admit that their house is not organized, and may be cluttered, they are adamant that the house is not "dirty," and that the pig does not live inside. In addition, Debra Moore, who lived with the Grandparents for a time, testified that "the house was cluttered, but clean." The children's psychologist, who was aware of the allegations concerning the condition of the Grandparents' home, testified that, in her opinion, the Grandparents' visitation should not be completely severed. Rather, she suggested a period of supervised visitation that would gradually evolve into unsupervised visitation.

Considering Mother's allegations concerning the Grandparents' actions, which Mother alleges were disparaging to her, and harmful to the children who were witness to many of these incidents, there is little doubt in the record that these parties have a very contentious relationship. In fact, the trial court made a specific finding that the relationship was "hostile." Without rehashing the specific allegations in the record, suffice to say that both the Grandparents and Mother have engaged in a pattern of negativity towards each other. None of the parties are free of guilt in this regard. Because there is ample evidence of fault on all sides, we cannot conclude that the evidence preponderates in favor of one side or the other. Because the burden was on Mother to rebut the presumption of substantial harm, and because the evidence does not preponderate in favor of either party, we cannot conclude that the trial court erred in determining that Mother had failed to meet her burden. From our review of the record, it appears that the trial court placed the most emphasis on the testimony of the children's psychologist on the issue of the parties' respective behavior. As noted in the court's order, *supra*, Dr. Martin testified that the children are having emotional difficulty with regard to the death of their father and that they have an emotional tie to their grandparents. The record supports this testimony. Dr. Martin testified that the children have a "natural affection" towards the Grandparents, which has not been negated by any of the hostile actions of which Mother accuses the Grandparents. From the record, it appears that

-11-

both Dr. Martin and the trial court were able to look beyond the bad actions on both sides to determine whether the children would be subject to further harm by continuation of the Grandparents' relationship with them.  Both the psychologist and the trial court determined that the opposite was true—that the children would suffer more harm from the severance of the Grandparents' relationship than they would suffer from its continuation. From the totality of the circumstance, we cannot conclude that the evidence preponderates against this finding. Accordingly, Mother's allegations of bad acts on the part of the Grandparents does not negate the presumption of substantial harm. Despite the animosity between the parties, it is our hope, as was the trial court's, that these parties will endeavor to repair their relationship, and to move forward for the sake of these children.  The children have suffered the loss of their father and, as of the date of  the hearing, continue to experience grief from their loss.  It would be most beneficial to these children to have the adults in their lives look past their own differences and consider what is in the children's best interest, a subject we now turn to address.

### III.  Best Interests.

Upon a finding of substantial harm based upon the cessation of the relationship between the minor child and grandparent, or where the presumption of substantial harm has not been rebutted (as is the case here),  the court is required to determine whether "grandparent visitation would be in the best interests of the children based upon the factors in § 36-6-307." Tenn. Code Ann. § 36-6-306(c). Tennessee Code Annotated Section 36-6-307 provides:

> In determining the best interests of the child under § 36-6-306, the court shall consider all pertinent matters, including, but not necessarily limited to, the following:
>
> (1) The length and quality of the prior relationship between the child and the grandparent and the role performed by the grandparent;
>
> (2) The existing emotional ties of the child to the grandparent;
>
> (3) The preference of the child if the child is determined to be of sufficient maturity to express a preference;
>
> (4) The effect of hostility between the grandparent and the parent of the child manifested before the child, and the willingness of the grandparent, except in case of abuse, to

encourage a close relationship between the child and the parent
or parents, or guardian or guardians of the child;

(5) The good faith of the grandparent in filing the petition;

*　　　　　*　　　　　*

(7) If one (1) parent is deceased or missing, the fact that the
grandparents requesting visitation are the parents of the
deceased or missing person;

(8) Any unreasonable deprivation of the grandparent's
opportunity to visit with the child by the child's parents or
guardian, including denying visitation of the minor child to the
grandparent for a period exceeding ninety (90) days;

(9) Whether the grandparent is seeking to maintain a significant
existing relationship with the child;

The trial court found that grandparent visitation was in the children's best interest.
Specifically, the court found that: (1) "the grandparents and the children have had a lengthy
and quality relationship and that there are emotional ties between the children and their
grandparents;" (2) "the preference of the [older] child for no visitation is not relevant because
the child is hereby determined not to be of sufficient maturity to express such a preference;"
and (3) "the grandparents were acting in good faith in filing the petition for visitation." The
record does not preponderate against these findings. In addition, the fact that the
Grandparents' are the parents of the children's deceased father, and the fact that Mother has
opposed visitation weigh in favor of a finding that continuation of the Grandparents'
relationship with these children is in their best interests. Again, the hostility that is evident
in this record is on the part of all of the parties, and thus does not weigh in favor of either
side. We express our hope that these parties will refrain from disparaging comments and
behavior in the future so that the children may maintain a relationship with both sides of their
family, and live without being put in the position of having to chose between these parties.

For the foregoing reasons, and from the totality of the circumstances, we conclude that
the trial court did not abuse its discretion in awarding the Grandparents' visitation in this
case. Accordingly, we affirm the order of the trial court. The case is remanded for all further
proceedings as may be necessary and are consistent with this opinion. Costs of this appeal
are assessed against the Appellant, Tanya Wadkins, and her surety.

_____
J. STEVEN STAFFORD, JUDGE