IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 4, 2019 Session

## COLETTE ELAINE WISE v. DANIEL GREGORY BERCU

**Appeal from the Chancery Court for Williamson County**
**No. 45413     Deanna Bell Johnson, Judge**

_____

### No. M2017-01277-COA-R3-CV

_____

This appeal arose from the parties' divorce proceedings.  After the husband failed to appear at a motion hearing wherein the wife was seeking to compel discovery and requesting sanctions against the husband, the Trial Court granted a default judgment against the husband.  Although requesting sanctions to include default judgment if the husband failed to comply with discovery, the wife had not specifically requested immediate entry of default judgment against him.  The Trial Court thereafter scheduled a final trial for the divorce.  The husband filed nothing with the Trial Court to attempt to remedy the default judgment against him prior to trial.  The husband was provided notice of the trial but failed to appear.  On the day of the trial, the Trial Court heard the evidence presented by the wife regarding the grounds for divorce, marital assets, marital debts, property division, and alimony.  Based on the wife's uncontested testimony and evidence presented at trial, the Trial Court granted a divorce, divided the marital estate, and awarded wife alimony *in futuro* and alimony *in solido*.  Subsequently, the husband filed two motions pursuant to Tennessee Rule of Civil Procedure 60.02, both of which were denied by the Trial Court.  The husband appealed.  Upon a review of the record before us, we determine no reversible error exists in this matter.  We, therefore, affirm the Trial Court's judgment in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Sarah Richter Perky, Franklin, Tennessee, for the appellant, Daniel Gregory Bercu.

Thomas F. Bloom, Nashville, Tennessee, for the appellee, Colette Elaine Wise.

## OPINION

## Background

Colette Elaine Wise ("Wife") and Daniel Gregory Bercu ("Husband") were married in March 2005. It was Wife's first marriage and Husband's second. No children were born of the marriage. Husband is an independent contractor emergency room physician earning approximately $38,123 per month. During the marriage, Wife worked in the non-profit sector. At the time of trial, Wife was disabled and unable to maintain employment.

In July 2016, Wife filed a complaint for divorce in the Williamson County Chancery Court ("Trial Court"), alleging grounds of irreconcilable differences or, alternatively, inappropriate marital conduct and adultery. Husband filed an answer to Wife's complaint and a counterclaim, which alleged grounds of irreconcilable differences or inappropriate marital conduct. Discovery thereafter commenced.

In November 2016, Wife filed a motion to compel discovery responses alleging that despite Wife's counsel sending a letter in September to Husband's counsel about the overdue responses and Husband's counsel responding that Husband would comply as soon as possible, discovery responses still had not been provided. Wife's counsel also sent another letter in October about the overdue responses. In the letter, Wife's counsel referred to an Agreed Order entered by the Trial Court on October 6, 2016, which stated, as pertinent, that the parties had agreed to provide to the opposing party within thirty days an accounting of transfers and withdrawals from all bank accounts in joint or separate names for the time period from January 1, 2016, through September 1, 2016, and also to provide an accounting of all income and expenses for each month beginning September 1, 2016, by the 15th day of the following month. The Trial Court held a hearing on Wife's motion to compel and entered its order on December 2, 2016, granting Wife's motion to compel and ordering Husband to provide discovery responses within ten days. The Trial Court also awarded Wife $100 toward her attorney's fees. Thereafter, Husband responded to Wife's discovery requests but did not comply with the Trial Court's order requiring an accounting of his finances.

On December 19, 2016, Husband's counsel filed a motion to withdraw requesting to be relieved immediately as counsel. The motion asserted, in part, that Husband had notified counsel that he no longer wished for her to represent him "effective right away." The motion also stated that the only outstanding matter was that Husband needed to file his monthly accounting of all expenses for each month since January 2016, which counsel had advised Husband about and which were late. Husband's counsel filed an amended motion to withdraw on January 5, 2017, requesting an attorney's fee lien

against the marital estate. Husband's counsel filed an affidavit stating that she had spent over 65 hours working on the case including spending 51.2 hours drafting and preparing Husband's discovery responses. The Trial Court entered an order on January 25, 2017, allowing Husband's counsel to withdraw effective immediately and granting the attorney a lien against the marital estate. In that order, the Trial Court stated "that there will be no prejudice to the Husband given the current posture of the case." Also on January 25, 2017, Husband filed a *pro se* letter to the Trial Court advising that he no longer was represented by counsel and requesting forty-five days to retain a new attorney. Husband did not schedule a hearing before the Trial Court regarding approval of his request.

On February 3, 2017, Wife filed a motion to compel and for sanctions pursuant to Tennessee Rule of Civil Procedure 37.02. Wife alleged that Husband had failed to provide the agreed upon financial accounting for January 2016 through December 2016 and had failed to fully and completely respond to discovery. In her motion, Wife requested that the Trial Court enter an order compelling Husband to comply with discovery within ten days or face sanctions including entry of default judgment against him. On February 22, 2017, Wife appeared at the hearing for her motion to compel and for sanctions. Husband was provided notice of the motion hearing, but neither Husband nor counsel on his behalf appeared. The Trial Court entered a default judgment against Husband on March 3, 2017, for failure to comply with court orders regarding discovery and the required accounting of Husband's income and spending. The Trial Court further granted Wife an award of attorney's fees in the amount of $5,405. The court order scheduled a final hearing for March 28, 2017. Husband was included on the certificate of service to that order.

Neither Husband nor any counsel on his behalf appeared at the trial on March 28, 2017. The Trial Court conducted a trial, receiving evidence regarding grounds for divorce, the distribution of marital property, and alimony. Upon consideration of the evidence presented by Wife, the Trial Court entered its Final Decree of Divorce, which granted Wife a divorce on the grounds of adultery and inappropriate marital conduct by Husband, distributed the parties' marital assets and debts, and granted Wife awards of alimony *in solido* and alimony *in futuro*.

In April 2017, Husband filed a motion to alter or amend and for relief pursuant to Tennessee Rule of Civil Procedure 60.02(1) and (5).[1] The Trial Court denied Husband's motion after finding that Husband's conduct was willful and that he had failed to establish excusable neglect. On June 21, 2017, Husband's new counsel entered a notice of appearance. That same day, Husband filed with the Trial Court his discovery

---

[1] We note that Husband's motion cites to only Tennessee Rule of Civil Procedure 60.02(5) but included alleged facts relevant to subsection (1). Furthermore, it appears that the Trial Court treated such motion as including relief pursuant to subsection (1).

responses and the communications between Husband and counsel with regard to discovery and the withdrawal of Husband's original counsel.

Husband then appealed to this Court and filed a designation of the record, which included the items he filed on June 21, 2017. After the record was transmitted to this Court, Wife filed a motion to strike from the appellate record Husband's discovery responses and the communications between counsel. This Court remanded to the Trial Court for consideration of Wife's motion to strike, which was subsequently granted by the Trial Court.

Husband thereafter filed a motion to remand this matter to the Trial Court for the filing and adjudication of a Rule 60.02(2) motion. This Court remanded to the Trial Court for consideration of Husband's motion. A hearing was scheduled for this motion, but the Trial Court informed the parties that a hearing was unnecessary and subsequently entered its ruling without a hearing. The Trial Court dismissed Husband's Rule 60.02(2) motion, determining that Husband had not provided sufficient specificity in his motion to support relief pursuant to Rule 60.02(2).

## Discussion

Although not stated exactly as such, Husband raises the following issues for review on appeal: (1) whether the Trial Court erred by entering a default judgment against Husband, (2) whether the Trial Court erred by denying Husband's Rule 60.02 motions to set aside the default judgment, (3) whether the Trial Court erred in its valuation of the marital property and its distribution of the marital estate, (4) whether the Trial Court erred in its award to Wife of alimony, (5) whether the Trial Court erred by awarding Wife her reasonable attorney's fees, and (6) whether Husband is entitled to an award of attorney's fees incurred during the appeal. Wife raises one additional issue for appeal, which we restate slightly: whether Wife is entitled to an award of her reasonable attorney's fees incurred on appeal.

Our review is de novo upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Kelly*, 445 S.W.3d at 692.

We first address Husband's issue regarding whether the Trial Court properly granted default judgment against Husband. The parties filed an agreed order, entered by the Trial Court in October 2016, which required both parties to provide to the other party an accounting of all bank accounts both jointly and separately owned. Pursuant to this order, the parties were required to provide an accounting of all money spent from January

- 4 -

1, 2016, through September 1, 2016, to the other party within thirty days of the order. Also, the order required the parties to provide an accounting of all income and expenses for all subsequent months that would be due on the 15th day of the following month.

In November 2016, Wife filed her first motion to compel discovery. Following a hearing, the Trial Court granted Wife's motion and required Husband to comply with discovery within ten days of the order. Subsequently, Husband provided some discovery responses to Wife but had not provided the court-ordered accounting of his financial transactions.

Husband filed a letter with the Trial Court on January 25, 2017, informing the Trial Court that he was no longer represented by an attorney and requesting an additional forty-five days to retain counsel. In this letter, Husband included contact information for the attorney he planned to retain. During oral argument before this Court, Husband's attorney stated that Husband was not present for the motion to compel hearing due to his belief that he had forty-five days to retain counsel. Although Husband's letter to the Trial Court was filed on January 25, 2017, Husband's attorney had filed a motion to withdraw on December 19, 2016, informing the Trial Court that Husband no longer wished for her to represent him in the matter. Following his letter, Husband did not inquire with the Trial Court whether the Trial Court had granted him additional time to retain counsel and, instead, failed to appear at subsequent hearings for which he was provided notice.

On February 3, 2017, Wife filed her second motion to compel discovery and a request for Rule 37.02 sanctions against Husband. According to Wife's motion, Husband had maintained separate credit and bank accounts from Wife, had provided "seriously deficient" discovery responses, had not provided an accounting for his bank accounts regarding his income and spending as ordered, and had been "very secretive" about his finances. Wife's motion began as follows:

> Comes now [Wife] and respectfully seeks an Order compelling Husband to immediately comply with the Court's prior Order entered on October 6, 2016, and provide a financial accounting of his income and expenses, **and** for Rule 37 sanctions against [Husband] for failing to comply with discovery orders . . . .

(Emphasis added.) In her motion, Wife provides a list of a trial court's options regarding sanctions pursuant to Tennessee Rule of Civil Procedure 37.02. Wife proceeded as follows:

> It is well-established that a default judgment is appropriate where there is a clear record of delay or contumacious conduct. *Murray v. Christian Methodist Episcopal Church*, 153 S.W.3d 371 (Tenn. Ct. App.

2004). [Husband] has a clear pattern of discovery abuse, stonewalling, and unreasonable delay.

Wife then requested the Trial Court to enter an order compelling Husband to comply with discovery orders within ten days "or face sanctions including the Court entering a default judgment against Husband . . . ." A hearing was held subsequently, at which Husband failed to appear. Husband still had not complied with discovery orders by that time. As such, the Trial Court granted Wife's motion for sanctions by entering a default judgment against Husband, determining that Husband was "not cooperating with discovery orders and disobeying the Court's prior orders on financial accounting."

Husband contends that the Trial Court erred by granting default judgment against him. According to Husband, Wife did not properly request a grant of default judgment in her motion to compel discovery and for sanctions. However, we find that argument to be without merit. The first line of Wife's motion requested sanctions against Husband pursuant to Tennessee Rule of Civil Procedure 37.02 for failure to comply with discovery orders. Wife also described the sanctions available to the Trial Court, which included entry of default judgment. Wife then requested the Trial Court to compel Husband to comply with discovery within ten days or to face sanctions. We determine this motion to be sufficient to put Husband on notice that Wife was requesting sanctions against him in the form of a default judgment should he not comply with discovery requests or the Trial Court's order requiring he provide Wife with a financial accounting. Had Husband appeared at this hearing, he could have responded to Wife's motion. He, however, did not do so.

After the entry of default judgment against Husband, the Trial Court scheduled a subsequent final hearing on March 28, 2017. Husband was included on the certificate of service of this order demonstrating that a copy of this order was mailed to him by U.S. mail on February 23, 2017. The Trial Court's March 2017 divorce decree was based on evidentiary support and was not merely a default judgment. *See* Tenn. Code Ann. § 36-4-114 (2017) (requiring a trial court to hear proof of the facts alleged regarding the statutory grounds for divorce in all cases except a divorce on the ground of irreconcilable differences). During the March 28, 2017 hearing, the Trial Court heard evidence and considered exhibits presented by Wife regarding grounds for divorce, distribution of marital property and debts, and alimony. Although Husband may have been precluded from presenting contradictory evidence during this trial because of the default judgment against him, *see Marshall v. Marshall*, No. M2009-02463-COA-R3-CV, 2010 WL 4670982, at *4 (Tenn. Ct. App. Nov. 16, 2010), Husband could have made an effort to remedy the entry of a default judgment against him prior to trial. Husband had the ability to appear in court both at the February 2017 hearing and for trial in March 2017 or to file pleadings in an attempt to prevent or remedy the default judgment. Instead, Husband chose to do nothing until after the Trial Court had entered its final divorce decree.

Husband provided no justifiable explanation for his failure to comply with discovery or to appear at either the trial or the motion to compel and sanctions hearing.

Husband argues that the Trial Court erred by failing to stay the proceedings to allow Husband time to hire an attorney. However, the record reflects that Husband had sufficient time to hire an attorney. Husband's attorney had filed her initial motion to withdraw on December 19, 2016, and had stated that she was withdrawing immediately because Husband had informed her that he no longer wanted her to represent him in this matter. The hearing on the motion to compel and for sanctions did not occur until February 22, 2017. Husband had over two months to hire new counsel to represent him. As such, we find the Trial Court did not err in this regard.

Additionally, Husband avers that "the trial court erred in entering a default judgment against him when the default judgment was the first discovery sanction entered in the case, he made a good faith effort to respond to discovery and the discovery shortcomings were not willful or contumacious, [Wife] suffered no measurable prejudice and [Husband] was unrepresented and financially unable to retain counsel when the default was entered." Wife's first motion to compel was in December 2016, and the Trial Court gave Husband ten days to respond to discovery following the hearing on that motion. Although Husband provided some discovery responses, he had not complied with the court-ordered requirement of providing his financial accounting. Wife filed her second motion to compel and a request for sanctions in February 2017. Husband did not appear for the motion hearing to contest the allegations made in Wife's motion to compel and for sanctions. The fact that Wife only filed one motion requesting sanctions does not preclude the Trial Court from entering a default judgment. Furthermore, we disagree, as did the Trial Court, that Husband had acted in good faith. Husband provided some discovery responses but had never provided the court-ordered financial accounting for any month required, despite his agreement to do so. The Trial Court concluded that Husband's actions were willful, and we agree. We find that Husband's argument in this regard is without merit. We therefore find that the Trial Court did not abuse its discretion by granting the default judgment against Husband. Consequently, we find Husband's argument that the Trial Court committed reversible error by granting a default judgment to be without merit.

We next address Husband's issues regarding whether the Trial Court erred by declining to set aside the divorce decree pursuant to Tennessee Rule of Civil Procedure 60.02. In pertinent part, Tennessee Rule of Civil Procedure 60.02 provides:

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic),

- 7 -

misrepresentation, or other misconduct of an adverse party; . . . or (5) any other reason justifying relief from the operation of the judgment.

Regarding Rule 60.02, our Supreme Court has explained as follows:

> [W]e have characterized relief under Rule 60.02 as an "exceptional remedy," *Nails v. Aetna Ins. Co.,* 834 S.W.2d 289, 294 (Tenn. 1992), "designed to strike a proper balance between the competing principles of finality and justice," *Jerkins v. McKinney,* 533 S.W.2d 275, 280 (Tenn. 1976). Rule 60.02 provides an "escape valve," *Thompson v. Firemen's Fund Ins. Co.,* 798 S.W.2d 235, 238 (Tenn. 1990), that "should not be easily opened." *Toney v. Mueller Co.,* 810 S.W.2d 145, 146 (Tenn. 1991). We have reversed relief granted under Rule 60.02 where the judgment was "not oppressive or onerous." *Killion v. Tenn. Dep't of Human Servs.,* 845 S.W.2d 212, 214 (Tenn. 1992). "[R]elief under Rule 60.02 is not meant to be used in every case in which the circumstances of a party change after the entry of a judgment or order, nor by a party who is merely dissatisfied with a particular outcome." *Henderson* [*v. SAIA, Inc.*]*,* 318 S.W.3d [328,] 336 [(Tenn. 2010)].

*Furlough v. Spherion Atl. Workforce, LLC*, 397 S.W.3d 114, 127-28 (Tenn. 2013). As related to default judgments, this Court has explained:

> We review a trial court's entry of a default judgment and its refusal to set that judgment aside pursuant to a Tenn. R. Civ. P. 60.02 motion under an abuse of discretion standard. *Tenn. Dep't of Human Serv. v. Barbee,* 689 S.W.2d 863, 866 (Tenn. 1985). However, in the interests of justice, the courts have expressed a clear preference for a trial on the merits. *Id.* Thus, rule 60.02 is construed liberally in the context of default judgments. *Id.* at 867.

*Reynolds v. Battles*, 108 S.W.3d 249, 251 (Tenn. Ct. App. 2003).

Husband filed two motions to set aside the Trial Court's judgments, one following entry of the divorce decree and the second after this case had been appealed to this Court. Husband's first motion to set aside the judgment sought relief from the divorce decree pursuant to Tennessee Rule of Civil Procedure 60.02(1) and (5). In consideration of relief pursuant to Rule 60.02(1), a trial court should consider the following: "(1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) whether the non-defaulting party would be prejudiced if relief were granted." *Pryor v. Rivergate Meadows Apartment Associates Ltd. P'ship*, 338 S.W.3d 882, 886 (Tenn. Ct. App. 2009) (quoting *Henry v. Goins,* 104 S.W.3d 475, 481 (Tenn. 2003) (other internal

citations omitted).  A party's willfulness is a threshold issue.  *See Discover Bank v. Morgan*, 363 S.W.3d 479, 494 (Tenn. 2012) ("[A] reviewing court must first determine whether the conduct precipitating the default was willful.  If the court finds that the defaulting party has acted willfully, the judgment cannot be set aside on 'excusable neglect' grounds, and the court need not consider the other factors.")  A party's conduct can be considered willful if it consists of conduct that is "flagrant and unexplained." *Id.* at 493.

On the other hand, Rule 60.02(5) has been described as a "catch-all" provision subject to narrow interpretation, which can provide equitable relief when no relief is available under the other subsections. *Hussey v. Woods*, 538 S.W.3d 476, 485-86 (Tenn. 2017).  Rule 60.02(5) only provides relief in the "most extreme, unique, exceptional, or extraordinary cases and generally applies only to circumstances other than those contemplated in sections (1) through (4) of Rule 60.02." *Furlough*, 397 S.W.3d at 128 (quoting *Holiday v. Shoney's S., Inc.*, 42 S.W.3d 90, 94 (Tenn. Ct. App. 2000)).  As to Rule 60.02(5), this Court has stated:

> The standards of Rule 60.02(5) are more demanding than those applicable to the other grounds for Rule 60.02 relief. *In re Joeda J.*, 300 S.W.3d 710, 716 (Tenn. Ct. App. 2009) (quoting *Wilkerson v. PFC Global Grp., Inc.*, No. E2003-00362-COA-R3-CV, 2003 WL 22415359, at *9 (Tenn. Ct. App. Oct. 23, 2003)).  "The bar for obtaining relief is set very high," and the moving party bears a heavy burden. *DeLong v. Vanderbilt Univ.*, 186 S.W.3d 506, 511 (Tenn. Ct. App. 2005) (citing *Johnson v. Johnson*, 37 S.W.3d 892, 895 n.2 (Tenn. 2001), *overruled by Howell v. Howell*, ––– U.S. ––––, 137 S.Ct. 1400, 197 L.Ed.2d 781 (2017)).  A Rule 60.02(5) motion "is not to be used to relieve a party from 'free, calculated, and deliberate choices he has made;' a party remains under a duty to take legal steps to protect his own interests." *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 19 (Tenn. 1991) (quoting *Cain* [*v. Macklin*], 663 S.W.2d [794,] 796 [(Tenn. 1984)]).

*Hussey*, 538 S.W.3d at 486.

In the present case, Husband filed a motion in April 2017 requesting the Trial Court set aside its March 2017 divorce decree.  This motion does not request relief from the February 2017 default judgment entered against him.  As his basis for relief, Husband stated that he was a traveling medical doctor, had recently encountered a financial hardship, and until recently, was unable to retain legal counsel.  Husband further explained that the judgment was not "fair and equitable" and that he did not have the ability to comply with the requirements in the decree.

The Trial Court considered Husband's motion and denied it. The Trial Court found that Husband had not complied with the Trial Court's order by providing Wife a monthly accounting of his finances and had not provided "complete answers" to discovery requests. The Trial Court further found that Husband had completely ignored the divorce case and the Trial Court's orders. According to the Trial Court, Husband had "ample opportunity to participate in the litigation but failed to do so."

The burden of proof was on Husband to prove that he was entitled to Rule 60.02 relief. *See Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 336 (Tenn. 2010). Based on Husband's failure to participate in litigation, the Trial Court found that Husband's conduct was willful and not the result of excusable neglect. Additionally, the Trial Court found that even if Husband's conduct had not been willful, he had not provided an excusable defense. Furthermore, the Trial Court found that Wife would be prejudiced were the Trial Court to set aside its March 2017 divorce decree. Moreover, we note that Husband's attorney acknowledged during oral arguments before this Court that Husband was not present for the March 2017 trial and that nothing in the record provided an explanation for his absence. We also note that Husband's attorney filed the first motion to withdraw on December 19, 2016 stating that Husband wanted her out as his attorney "effective right away." The hearing to compel was not until February 22, 2017. The final hearing was not until March 28, 2017. Husband furnished the Trial Court with no explanation as to his silence from December 19, 2016 until his new attorney filed a motion to alter or amend in April 2017. Under the circumstances in this case, we conclude that the Trial Court did not abuse its discretion by denying relief to Husband pursuant to Rule 60.02(1) or (5).

Following appeal to this Court, Husband requested remand of the matter to the Trial Court for consideration of his second motion to set aside the judgment, which requested relief pursuant to Tennessee Rule of Civil Procedure 60.02(2) to set aside the default judgment and the final decree of divorce. A party requesting relief pursuant to Rule 60.02(2) bears the burden of proof, is required to "describe the basis for relief with specificity," and must demonstrate by clear and convincing evidence that the requested relief is warranted. *Hussey v. Woods*, 538 S.W.3d 476, 483 (Tenn. 2017) (internal citations omitted). Regarding Rule 60.02(2), this Court has explained:

> Tenn. R. Civ. P. 60.02(2) motions disregard the old, arcane distinction between intrinsic and extrinsic fraud. Accordingly, post-judgment relief is warranted when the moving party proves with clear and convincing evidence the existence of conduct amounting to
>
>> an intentional contrivance by a party to keep complainant and the Court in ignorance of the real facts touching the matters in

> litigation, whereby a wrong conclusion was reached, and positive wrong done to the complainant's rights.

> *Leeson v. Chernau*, 734 S.W.2d 634, 638 (Tenn. Ct. App. 1987). Both withholding evidence and the knowing use of perjured testimony can provide grounds for granting post-judgment relief pursuant to Tenn. R. Civ. P. 60.02(2).

*Duncan v. Duncan*, 789 S.W.2d 557, 563 (Tenn. Ct. App. 1990) (footnote and other internal citations omitted).

In this case, Husband claims that Wife made "material and fraudulent misrepresentations" to the Trial Court regarding the following: (1) Husband's annual income, (2) Wife's medical disability, (3) Husband's loss of his primary job, and (4) Husband's active participation in discovery and the divorce proceedings. The Trial Court found that Husband had not pled with specificity his allegations that Wife made misrepresentations to the Trial Court sufficient to be entitled to relief pursuant to Rule 60.02(2).

In his motion, Husband alleged that Wife had fraudulently misrepresented Husband's income to the Trial Court. The Trial Court found that Husband had not asserted how Wife had misrepresented his income. We note that the most recent tax return Husband provided to Wife was a draft tax return from 2015, which reflected Husband's income to be $466,962. Husband did not provide Wife with updated discovery responses to demonstrate that his income had decreased or otherwise changed. During trial, Wife produced to the Trial Court Husband's 2015 draft income tax return, as well as his income tax return for 2014 and his social security statement of earnings. Based on this evidence, the Trial Court found Husband's average monthly income to be $38,123. The Trial Court found that based on the information presented at the hearing, Wife's representation of Husband's income was not false.

Husband further claims that Wife made fraudulent misrepresentations to the Trial Court by failing to inform the Trial Court that Husband had lost his primary job, which he claimed caused a significant decrease in his income. According to the Trial Court, Husband failed to demonstrate that Wife knew of his loss of this job. The Trial Court found that Wife was unsure where Husband was working due to his "consistent secrecy throughout the litigation." The Trial Court found that Wife could not misrepresent this fact as she was unaware of it.

Additionally, Husband asserts that Wife fraudulently misrepresented her health condition to the Trial Court and that she indeed was able to maintain gainful employment. However, the Trial Court found that Husband had not alleged that Wife

- 11 -

had misrepresented any information regarding her disability and that he had not established how Wife would be able to maintain employment as asserted. During trial, Wife had testified concerning her medical condition to the Trial Court, presented the testimony of two witnesses, and provided her medical records to the Trial Court. The Trial Court found that Husband's allegations lacked the specificity sufficient to support his request for Rule 60.02(2) relief.

Finally, Husband contends that Wife misrepresented to the Trial Court that Husband had not been participating in the parties' divorce litigation. According to Husband, his responses to the interrogatories and his production of over 875 pages of discovery proved that he was actively participating in the divorce proceedings. However, the Trial Court recognized that Husband had admitted to his nonparticipation in his initial motion to set aside the judgment. His motion reads: "[Husband] is aware that his lack of participation in this matter forced this Honorable Court to enter [the] *Final Decree of Divorce* without all of the necessary facts." The Trial Court further emphasized that Husband failed to appear at the March 2017 trial or respond to motions filed by Wife. The Trial Court, therefore, found that the record contradicted Husband's allegations of misrepresentation in this regard.

In determining that Husband was not entitled to extraordinary relief pursuant to Rule 60.02(2), the Trial Court found that the findings by the Trial Court in its March 2017 divorce decree were based on the evidence presented to it at the time of trial. The Trial Court further found that any evidence that was "not current, complete, or accurate" was a consequence of Husband's failure to comply with discovery and the orders of the Trial Court. The Trial Court, therefore, found that Husband was not entitled to relief pursuant to Tennessee Rule of Civil Procedure 60.02(2).

We review the Trial Court's denial of Husband's Rule 60.02(2) motion for an abuse of discretion. *See Henderson*, 318 S.W.3d at 335. The burden of proof is on Husband to demonstrate that Wife made fraudulent misrepresentations to the Trial Court and to describe these misrepresentations with specificity. *Id*. at 336. We determine, as did the Trial Court, that Husband did not meet that burden. We agree with the Trial Court that the factual findings made by the Trial Court were based on the uncontested evidence presented by Wife during the March 2017 trial. We also agree with the Trial Court that any problems with this evidence were the result of Husband's failure to comply with discovery and the orders of the Trial Court. As such, we determine no reversible error exists in the Trial Court's decision and, therefore, affirm the Trial Court's denial of Husband's Rule 60.02(2) motion.

We next consider whether the Trial Court's division of marital property was inequitable and an abuse of discretion. Courts must look to Tennessee Code Annotated §

36-4-121(c) when determining how to distribute marital property in a divorce. In pertinent part, Tennessee Code Annotated § 36-4-121(c) (2017) provides:

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable. Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence;

(11) The amount of social security benefits available to each spouse; and

(12) Such other factors as are necessary to consider the equities between the parties.

A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). As noted by this Court in *King v. King*, when dividing marital property:

The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163,] at 168 [(Tenn. Ct. App. 1994)]. . . . In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

*King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (quoting *Roseberry v. Roseberry*, No. 03A01-9706-CH-00237, 1998 WL 47944, at *4 (Tenn. Ct. App. Feb. 9, 1998)).

Husband takes issue with the Trial Court's valuation of certain assets as part of its distribution of the marital estate. According to Husband, certain items of marital property were no longer in existence at the time of the divorce trial. We once again emphasize that Husband had failed to disclose the court-ordered financial accounting of his income and spending and had not fully complied with discovery in this matter. Husband contends that even with his failures to comply with discovery including the Trial Court's orders, Wife could have subpoenaed the records from his bank relevant to his income and bank account balances but that she had failed to do so. We find this position that Wife should have taken additional steps to protect Husband from his failures less than persuasive. Wife presented evidence to the Trial Court that was uncontested.

- 14 -

The Trial Court considered the only evidence before it in making its findings regarding valuation of the marital property. As such, we determine that the evidence does not preponderate against the Trial Court's valuation of the marital property.

Husband further asserts that the Trial Court erred by determining that he had dissipated marital assets and by dividing the marital estate in such a way that was inequitable. "[O]ne party's dissipation of assets can be considered in formulating a property division that is equitable." *Hulshof v. Hulshof*, No. 01A01-9806-CH-00339, 1999 WL 767807, at *5 (Tenn. Ct. App. Sept. 29, 1999). Tennessee Code Annotated § 36-4-121(c)(5) specifically requires the court to consider "[t]he contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property . . . " in making an equitable distribution. The party alleging that marital assets have been dissipated "carries the initial burden of production and the burden of persuasion at trial." *Larsen-Ball v. Ball*, 301 S.W.3d 228, 235 (Tenn. 2010). Once a party has established a prima facie case that the opposing party has dissipated marital assets, the burden then "'shifts to the party who spent the money to produce evidence to show that the expenditures were appropriate.'" *Trezevant v. Trezevant*, 568 S.W.3d 595, 617 (Tenn. Ct. App. 2018), *perm. app. denied* (Tenn. Sept. 18, 2018), (quoting *Watson v. Watson*, 309 S.W.3d 483, 491 (Tenn. Ct. App. 2009)).

As our Supreme Court has instructed regarding dissipation:

Dissipation of marital property occurs when one spouse wastes marital property and thereby reduces the marital property available for equitable distribution. *See Altman v. Altman*, 181 S.W.3d 676, 681-82 (Tenn. Ct. App. 2005), *perm. to app. denied*, (Tenn. Oct. 31, 2005). Dissipation "typically refers to the use of funds after a marriage is irretrievably broken," *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006), is made for a purpose unrelated to the marriage, and is often intended to "hide, deplete, or divert" marital property. *Altman*, 181 S.W.3d at 681-82. In determining whether dissipation has occurred, trial courts must distinguish between dissipation and discretionary spending. *Burden*, 250 S.W.3d at 919-20; 24 Am.Jur.2d Divorce and Separation § 526 (2009). Discretionary spending might be ill-advised, but unlike dissipation, discretionary spending is typical of the parties' expenditures throughout the course of the marriage. *Burden*, 250 S.W.3d at 919-20.

*Larsen-Ball*, 301 S.W.3d at 235. Whether a party has dissipated marital assets is a finding of fact to be made by the trial court. *See Trezevant v. Trezevant*, 568 S.W.3d 595, 617 (Tenn. Ct. App. 2018), *perm. app. denied* (Tenn. Sept. 18, 2018) (citing *Altman v. Altman*, 181 S.W.3d 676, 682 (Tenn. Ct. App. 2005)).

- 15 -

In the present case, Wife testified during trial that Husband had spent "a lot" of marital money on other women during the marriage in contravention of the Trial Court's order prohibiting the parties from spending money on paramours. Wife testified that Husband had admitted in discovery to having sexual relations with fourteen other women. According to Wife, the women with whom Husband stated he had a sexual relationship were the women to whom Husband had sent marital money. Wife testified that Husband had taken two women on vacation. Additionally, Wife testified that she had discovered $3,700 in PayPal transactions to other women and other individuals. Wife further stated that Husband had $18,000 of Western Union transactions to other women, other individuals, and himself. According to Wife's testimony, Husband had withheld $193,984 of marital earnings from Wife and had spent those funds.

In total, the Trial Court found that Husband had dissipated $215,846 of marital property. In making its determination, the Trial Court relied on Wife's testimony and the records she submitted into evidence at trial. The Trial Court determined Wife had met her burden of proof showing dissipation by Husband, which shifted the burden to Husband to demonstrate that his expenditures were appropriate. *See Trezevant*, 568 S.W.3d at 617. We agree. Due to Husband's own actions and inactions, Husband provided no evidence to contradict the evidence presented by Wife. Therefore, we determine that the evidence does not preponderate against the Trial Court's finding that Husband dissipated these marital assets.

Additionally, Husband claims that the Trial Court's distribution of marital assets is "grossly inequitable." Wife presented evidence concerning the marital estate and her proposed distribution thereof. Considering the evidence presented by Wife at trial, the Trial Court divided the marital property in a way that it deemed to be equitable under the circumstances of this case. Wife was fifty-seven years old at the time of trial and was unable to maintain employment due to her medical condition. Husband was an emergency room physician earning an average of $38,123 per month. The Trial Court also took into account the marital funds that Husband had dissipated when making its equitable distribution of property. We further note that the Trial Court has a great deal of discretion in how it divides the marital estate. Husband once again asks this Court to save him from his own conduct. Husband has given us no satisfactory reason to do so. Taking all relevant factors into consideration, and aware of the Trial Court's discretion in such matters, we cannot say that this distribution is inequitable. We, therefore, affirm the Trial Court in its division of the marital assets and liabilities.

We next address whether the Trial Court erred in its alimony determination. As our Supreme Court has instructed regarding spousal support:

> For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal

- 16 -

support. *See Robinson v. Robinson*, 26 Tenn. (7 Hum.) 440, 443 (1846) ("Upon a divorce . . . the wife is entitled to a fair portion of her husband's estate for her support, and the amount thus to be appropriated is a matter within the legal discretion of the chancellor . . . ."). This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award. *See, e.g., Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).

Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew,* 40 S.W.3d at 470; *Robertson v. Robertson*, 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (footnote omitted).

When making alimony decisions, courts are to consider the factors contained in Tennessee Code Annotated § 36-5-121(i) (2017), which, in pertinent part, provides:

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

- 18 -

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Our Supreme Court has articulated the two most important factors to a court's alimony decision as follows:

> Although each of these factors must be considered when relevant to the parties' circumstances, "the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay." *Riggs* [*v. Riggs*], 250 S.W.3d [453,] 457 [(Tenn. Ct. App. 2007)]. *See also Bratton* [*v. Bratton*], 136 S.W.3d [595,] 605 [(Tenn. 2004)]; *Robertson* [*v. Robertson*], 76 S.W.3d [337,] 342 [(Tenn. 2002)]; *Burlew* [*v. Burlew*], 40 S.W.3d [465,] 470 [(Tenn. 2001)]. Carefully adhering to the statutory framework for awarding spousal support, both in terms of awarding the correct type of support and for an appropriate amount and time, fulfills not only the statutory directives but also alimony's fundamental purpose of eliminating spousal dependency where possible.

*Gonsewski*, 350 S.W.3d at 110.

In this case, the Trial Court awarded Wife alimony *in solido* in the amount of $100,000, which is representative of approximately half the marital assets Husband had dissipated by the time of trial. The Trial Court further awarded Wife alimony *in futuro* in the amount of $6,500 per month. Husband was also required to maintain health insurance for Wife until she is eligible for Medicare and a supplemental policy thereafter.

At trial, the Trial Court found that Husband was an emergency room physician and had an average monthly income of $38,123. The parties had been married for approximately twelve years, and Husband was the primary breadwinner during the marriage. At the time of trial, Wife was fifty-seven years old. Wife provided an itemized statement of her monthly expenses, totaling $8,014.

Wife presented testimony that she was disabled and unable to maintain employment due to her medical condition. Wife testified that she had been diagnosed with rare medical disorders, one of which was "superior canal dehiscence." According to Wife, the bone in the superior canal of her ear had become very thin. Wife testified that this condition caused holes to open up due to the thinning of the bone. As a result of this illness, Wife had to undergo intracranial surgery. Since that surgery, Wife had been seeing a neurologist due to a continued lack of balance. According to Wife, her balance

was worse in some circumstances than others, including loud places or places with several people. Wife testified that she often had difficulty reading. Wife further testified that she also had another disorder called "android streaks," which meant that she had cracks through her retinas. According to Wife, she had three eye hemorrhages that year already because of this condition. Due to the hemorrhages, Wife needs to have eye injections each month as treatment to prevent blindness. Wife further testified that she had "nystagmus," which caused her eyes to continually jump.

Wife presented two witnesses at trial who could attest to Wife's deteriorated medical condition. A witness for Wife, Celilia Gomez, testified that she had known Wife for nine years. According to Ms. Gomez, she observed Wife's deterioration through the years. Since her surgery, Wife's health had deteriorated to such an extent and Wife's balance is so bad that Ms. Gomez had to assist her. Ms. Gomez further testified that Wife walked with a cane. Another witness for Wife, Gail Levy, also testified that Wife's condition had deteriorated to such an extent that Wife was unable to keep her balance and had difficulty reading. According to Ms. Levy, she was "stunned at how far downhill [Wife's condition] had gone."

Wife's evidence presented at trial regarding the relevant factors, the only evidence available due to Husband's conduct, was uncontested. Upon consideration of the factors in Tennessee Code Annotated § 36-5-121(i), the Trial Court determined that Wife had a need for long-term spousal support and that she was unable to be economically rehabilitated. The Trial Court considered Wife's age, her high school education, and Wife's poor and deteriorating health. The Trial Court further considered Husband's employment as an emergency room physician, earning a monthly income of $38,123 and found that Husband had the ability to pay such alimony to Wife. A review of all relevant statutory factors including, among others, the duration of the marriage, the earning capacity of the parties, Wife's medical conditions, and the parties' prior divorce standard of living support the Trial Court's decision. We find no abuse of discretion in the Trial Court's decision to award Wife alimony *in solido* in the amount of $100,000 and alimony *in futuro* at the rate of $6,500 per month.

We next address Husband's issue of whether the Trial Court erred by awarding Wife a portion of her reasonable attorney's fees. In its March 2017 judgment, the Trial Court ordered Husband to pay the remaining balance of Wife's attorney's fees totaling $14,206, in addition to the $5,505 already awarded to Wife in prior court orders. With respect to the award of attorney's fees in divorce cases, our Supreme Court has stated:

> It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony award, in deciding whether to award attorney's fees as alimony in solido,

the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses or the spouse would be required to deplete his or her resources in order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

*Gonsewski*, 350 S.W.3d at 113 (citations omitted).

The record reflects that Husband's monthly income was $38,123. At the time of trial, Wife was disabled and unable to maintain employment. There is a deep disparity in the earning power of the parties. The Trial Court found that Wife was not able to be economically rehabilitated due to "her age, high school education, [and] poor and deteriorating health." The Trial Court further found that Husband had the ability to pay alimony to Wife. We find no abuse of discretion in the Trial Court's award to Wife of her attorney's fees totaling $19,711. We affirm the judgment of the Trial Court on this and on all other issues.

As a final matter, we address whether either Husband or Wife is entitled to an award of attorney's fees incurred during this appeal. Both parties agree that an award of attorney's fees incurred on appeal is within our discretion. *See Andrews v. Andrews*, 344 S.W.3d 321, 340 (Tenn. Ct. App. 2010). In the exercise of that discretion, we decline to award attorney's fees to either party.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. We decline to award to either party an award of attorney's fees incurred on appeal. The costs on appeal are assessed against the appellant, Daniel Gregory Bercu, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE